## Vogel et al. v. Stupi (et al., Appellant).

254

Argued March 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*George Y. Meyer*, with him *Samuel G. Wagner, George M. Spence* and *Spence, Custer & Saylor*, for appellant.

*Frank P. Barnhart,* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1947:

This action in trespass was instituted for James J. Vogel, a minor, by his father as guardian, and by his parents, Frank and Iona Vogel, in their own behalf. One defendant was Walter Stupi, the driver of an automobile which struck the minor plaintiff shortly after he had alighted from a school bus which was operated by Johnstown Traction Company, the other defendant. At the trial, the jury returned verdicts against both defendants. Motions for judgment n. o. v. and for a new trial having been made by each defendant, and refused by the court en banc, the following judgments were entered on the verdicts: $3,162.00 for the parents and $26,600.00 for the minor. The Johnstown Traction Company alone appealed from the entry of the judgments and assigned as error the refusal of its motions.

Our analysis of the record must conform to a well settled principle of adjective law; that all facts and inferences deducible therefrom must be considered in the light most favorable to plaintiff's case, in determining whether judgment n. o. v. should be entered. The application of this rule to the case before us establishes the following factual situation.

On February 21, 1945, plaintiff, six years of age, was a passenger on a school bus operated by defendant traction company under a contract with the School District of Conemaugh Township. About 3:30 o'clock, Eastern War Time, the bus was stopped to discharge passengers at a point on Route No. 53 about two miles east of Johnstown, Pennsylvania, and directly across the road from plaintiff's home. This part of the highway consisted of a concrete roadbed sixteen feet wide, bordered on either side by a macadam strip three feet in width. The bus had travelled in an easterly direction from the Lincoln School where about thirty grade school children had been picked up. The bus which was seven feet wide had

been stopped with its extreme left portion about six inches to the right of the center line of the highway and with all four wheels on the concrete. When the door, located toward the front of the bus opposite the driver, was opened, a group of the children, including plaintiff, alighted.

A ten-year old boy, a member of the school's safety patrol, was the first passenger off the bus. He took up a position in front of the bus and in the middle of the highway, carrying a pole with a signal flag attached. Almost as soon as he had done so he saw an automobile approaching from the east and immediately swung the pole parallel to the road to prevent the children from attempting to cross. The minor plaintiff was then standing in front of the left front fender of the bus and far enough away from the patrol boy that the pole did not restrain him or push him back. The road was icy and slippery and as the car approached the group of children, it skidded and its rear swung over the center line of the highway; the driver straightened it up in time to avoid striking the bus. However, as the car passed the minor plaintiff, its left rear bumper struck the back of his right leg, seriously and permanently injuring his thigh. Plaintiff fell with part of his body on each side of the center line but the testimony does not precisely establish the position he occupied when struck. It is possible that the child took a step forward immediately before the accident.

Defendant Stupi, who was called by plaintiff as if for cross-examination, testified that when he first saw the bus it was in motion. The vehicles were then about 1,000 feet apart. Although he continued to see the bus as they moved toward each other, he did not recognize it as a school bus until he was about two hundred feet away and he saw "children coming out of the bus". From the place where the bus stopped, its driver had an unobstructed view ahead of 800 feet. He saw or should have seen the automobile approaching. When Stupi saw the

children preparing to cross the road, he realized the dangerous situation and applied his brakes. He testified that his speed was then thirty miles an hour but other witnesses, called by plaintiffs, estimated it as high as fifty miles an hour. The speed and slippery road caused the car to skid when the brakes were applied. The jury found him negligent and there is ample testimony to support that conclusion. He did not appeal.

Johnstown Traction Company, appellant, contends that judgment n. o. v. should be entered in its favor for the reason that plaintiffs have not shown negligence on the part of the bus driver which was the proximate cause of the injury. The factual situation here presented is new in this jurisdiction. Our study of the decisional authorities reveals no Pennsylvania case which can be regarded as controlling. Cf. *Stuckwish v. Hagan Corp.*, 316 Pa. 513, 175 A. 381.

The learned trial judge, in his oral charge, correctly presented the question of appellant's negligence as follows: "The traction company in carrying children of tender years to and from school are bound to use every reasonable caution and care for the safety of these children, either while they are riding in the bus or alighting from the bus or leaving the immediate vicinity of the bus at the completion of their journey. You should ask yourselves, when considering whether the operator of the bus was negligent, certain interrogations—perhaps others which we will not mention: Did the bus driver take every reasonable precaution as he stopped the bus, opened the door and left the children out, and as they stood in front of the bus? Did the bus driver have a clear view ahead? Did he see the Stupi car coming toward him before he opened the door? If he didn't, would a man taking reasonable care have seen the oncoming Stupi car? If so, then should he have opened the doors, knowing the children would have to cross the road to go to their home, which, we believe, he admitted he knew? Or after the children were out in front of the school bus,

when he saw the Stupi car skid, then should he have given some warning to the children, particularly to young Jimmie; or did he have time to give any warning? His testimony was that he hadn't.

"There is no rule of law that a school bus shall never have its doors open if a car is approaching. In heavy traffic, such a rule might make it impossible to permit children to alight for a long period of time. But, under the circumstances in this case, was it a careful and prudent thing to open the doors of the bus?"

The above statement is in accord with the basic principles of negligence law: "In respect of a passenger who is a minor, the carrier is bound to exercise a high degree of care, and, as to a young child, it has been asserted that the carrier owes the highest practical degree of care on the part of its employees in carrying out the contract of carriage, and that the age of such child is a factor which must be considered in the measurement of such care.": 13 C.J.S., Carriers, section 694; *Chicago, M. & St. P. Ry. Co. v. Harrelson,* (C.C.A. 8th Cir.) 14 F. 2d 893.

The same principle is thus more fully stated in 37 Am. Jur., Motor Transportation, section 149 (1946 Pocket Parts) : "Perhaps the most frequent single consideration taken into account by the courts in determining whether the place where a motor carrier has discharged a passenger is safe or not is the age of such passenger. This is especially true where, as in the case of transportation of school children, the operator knows that the passenger must cross the highway after leaving the bus to get to his destination. It is generally held that the care to be exercised must be proportioned to the degree of danger inherent in the child's youth and inexperience . . . Where the operator of a motorbus can see that there is a vehicle approaching and knows that his passenger is required to cross the highway to reach his destination, it has been held negligent to discharge such passenger before the vehicle has passed . . . And it can scarcely

be doubted that the duty to warn a passenger of approaching danger is more imperative where the passenger is a child."

See *Phillips v. Hardgrove,* 161 Wash. 121, 296 P. 559; *Taylor v. Patterson's Adm'r.,* 272 Ky. 415, 114 S. W. 2d 488; *Hunter v. Boyd,* 203 S. C. 518, 28 S. E. 2d 412; *Burnett v. Allen,* 114 Fla. 489, 154 So. 515.

In *Earl W. Baker & Co. v. Lagaly,* (C. C. A. 10th Cir.) 144 F. 2d 344, a very similar fact situation was presented except the child was hit by a truck which came from the rear of the school bus. The pertinent excerpts of the opinion of the court are as follows: "The bus proceeded . . . to the point in front of the Lagaly home where it stopped. The driver knew that the paved highway was traveled generally; knew or should have known that the Lagaly children would immediately start across it in order to reach their home; and knew or should have known that the truck was following the bus. Yet, without exerting any effort to ascertain the condition of traffic approaching from the rear, without making any effort to ascertain the proximity of the truck, and without giving the children any warning in respect of the approaching truck, he opened the door and permitted them to alight. Considering all the facts and circumstances in their totality, the jury was warranted in finding that the driver was negligent in the operation of the bus, and that the negligence was a proximate cause of the accident."

This case was for the jury. It is impossible to say as a matter of law that defendant transportation company was not guilty of negligence, or that its negligence was not the proximate cause of this unfortunate accident. The company by contract accepted a grave responsibility to carry children to and from school, and in discharge of this duty it was bound to exercise the highest practical degree of care. Whether it did so or not, on the facts of the case, was clearly a question for the jury.

Appellant's motion for a new trial is pressed only on the ground that the judgments are grossly excessive. With this we must agree as to the judgment for minor plaintiff. There is no question that this child suffered severe damage to his right leg and that his injuries are both painful and permanent. The muscles of the thigh were crushed and destroyed from the knee almost to the upper thigh. The exact degree of the permanent loss of use of the right leg will depend upon the success of future operations when he is older. The jury awarded him $21,600.00 for loss of earnings after he reaches the age of twenty-one, and $5,000.00 for pain and suffering, a total of $26,600.00. We are all agreed that this amount is very excessive and that if reduced to $14,-000.00, would represent what is fair and just in the circumstances. The judgment for the minor plaintiff (Appeal No. 10 March Term, 1947), is reduced to $14,-000.00. The judgment for the parents (Appeal No. 9 March Term, 1947), of $3,162.00, is left unchanged because it is not excessive. We have carefully considered all other assignments of error and find no merit in them. The motion for a new trial is overruled.

Judgment (Appeal No. 9 March Term, 1947) is affirmed.

Judgment (Appeal No. 10 March Term, 1947), as reduced, is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

I concur with the conclusions reached by Mr. Justice ALLEN M. STEARNE that the court below erred in refusing appellant's motions for judgment non obstante veredicto. This record presents two questions: (1) determination of the degree of care which must be exercised by the driver of a bus transporting school children and whether there has been a breach of said duty, and (2) whether the acts of the driver or his failure to act constituted the proximate cause of the accident. The facts not being

in dispute, determination of the proximate cause is properly before this Court: *Leoni v. Reinhard,* 327 Pa. 391, 396, 194 A. 490.

It is unreasonable and unjust to impose upon the operator of a bus transporting children a duty to anticipate that the driver of a vehicle approaching 1000 feet away at a speed of 35 miles per hour will suddenly and without warning lose control of his vehicle and skid across the center of a highway and strike a child standing in a place of comparative safety. Unquestionably, a very high degree of care has been imposed upon a bus driver who transports children and aged persons: *Stuckwish v. Hagan Corporation,* 316 Pa. 513, 515, 175 A. 381; *Baker v. Lagaly,* 144 F. 2d 344 (CCA 10th, 1944); *Chicago, M. & St. P. Ry. Co. v. Harrelson,* 14 F. 2d 893 (CCA 8th, 1926); *Pendarvis v. Pfeifer,* 132 Fla. 724, 182 So. 307; *Burnett v. Allen,* 114 Fla. 489, 154 So. 515; *Taylor v. Patterson's Admr.,* 272 Ky. 415, 114 S.W. 2d 488; *Hunter v. Boyd,* 203 S. C. 518, 28 S. E. 2d 412; *Leach v. School District,* 197 Wash. 384, 386, 85 P. 2d 666; *Phillips v. Hardgrove,* 161 Wash. 121, 296 P. 559. See 145 A. L. R. 1206; 131 A. L. R. 580. That duty should not, however, impose such an extraordinarily high degree of care that a transportation company will not only become virtually an insurer of the safety of the passengers during the actual transportation but also thereafter and until each and every child has reached the safety of its home and is in the custody of its parents. To so hold would prevent the discharge of a child at any given place along a busy thoroughfare or rural road without assumption of liability for injuries resulting to such child even though caused by the subsequent negligent operation of a vehicle approaching 1000 feet away. It must be assumed further that in all instances the approaching vehicle is traveling at a reasonable rate of speed and under proper control.

The majority opinion does not suggest what further act the bus driver in the instant case could or should

have done. It does, however, establish an exception to the well-settled principle that one is not bound to anticipate the negligence of another. The driver did all that he could reasonably be required to do when he discharged the children at a place of reasonable safety and at a time when there was no *apparent possibility of danger* to them. The orbit of duty is determined by the reasonable forseeable risk of harm. In *Irwin Savings & Trust Company v. Penna. R. R. Company,* 349 Pa. 278, 284, 37 A. 2d 432, Mr. Justice DREW, quoting from *Pass. Ry. Co. v. Trich,* 117 Pa. 390, 399, 11 A. 627, said : " 'To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared.' " The standard imposed is thus expressed by Justice DREW (p. 284) : *"It is too much to suppose that a prudent man, of ordinary intelligence, exercising due care, and with the responsibility that was upon defendant, could have anticipated and forseen this unfortunate happening."* (Italics supplied.) Similarly, the driver of the bus was not required to anticipate all possibilities which might have occurred, nor that the driver of the vehicle, approaching 1000 feet away would lose control of his car and suddenly, and without warning, skid across the center of the highway and strike the minor appellee who was prudently awaiting the passing of the said approaching car. The duty which the majority imposes upon the driver is unreasonable and unjust.

Whatever the driver of the bus may have done or failed to do was neither the proximate nor the contributing cause of the accident. "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm": Restatement, Torts, section

431. "The negligence must also be a substantial factor as well as an actual factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred": Restatement, Torts, section 431, comment a.

If it be assumed that there was sufficient evidence to permit a jury to pass upon the breach of duty, it is clear that the negligence of the driver of the oncoming vehicle was an independent, intervening cause,—a superseding cause. "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about": Restatement, Torts, section 440. "a. It is not necessary that an intervening force shall have been set in motion subsequent to the time when the actor's negligent conduct is committed. A force set in motion at an earlier time is an intervening force if it first operates after the actor has lost control of the situation and the actor neither knew nor should have known of its existence at the time of his negligent conduct . . . c. *Dependent and independent intervening forces.* An intervening force may be dependent or independent. A dependent, intervening force is one which operates in response to or is a reaction to the stimulus of a situation for which the actor has made himself responsible by his negligent conduct. An independent force is one the operation of which is not stimulated by a situation created by the actor's conduct": Restatement, Torts, section 441, comments a and c.

In *Cooke v. Elk Coach Line*, 37 Del. 120, 180 A. 782, on very similar facts, the court, in sustaining defendant

carrier's demurrer, said: "Negligence can never furnish the basis of an action for damage unless such negligence was the proximate cause of the injury suffered by the plaintiff; for, if an injury has resulted from some wrongful act or omission, but only through or by means of some intervening cause from which the injury followed as a direct and immediate consequence, the law refers the damage to the last or proximate cause. Damage cannot be laid to the door of a given negligent act as the proximate, or efficient, cause, when it appears that, subsequent to that negligence, a new independent and unexpected factor intervenes which, itself, appears to be the real and natural cause of the mischief . . . Clearly, the (plaintiff's) declaration shows that the proximate, or efficient, cause of the injury and damage was the intervening negligence of the operator of the passing automobile." In *Mississippi City Lines v. Bullock,* 13 So. 2d 34 (Miss.), the court likewise, on similar facts, held that where defendant carrier discharged a minor passenger at a reasonably safe location, negligence of the driver of an oncoming vehicle was an independent and intervening cause rendering any possible negligence of defendant bus operator a remote cause. The court said: "Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof."

The cases cited by the majority can readily be distinguished from the instant case. An examination of those cases reveals that the minor plaintiff was struck while walking, running, or darting into the path of the

oncoming vehicle. Here, the minor plaintiff was standing in a place of reasonable safety in front of the left front fender of the school bus. In none of those cases was there the cooperation with a schoolboy patrolman. The evidence clearly reveals that the minor plaintiff neither darted out nor walked into the path of the oncoming vehicle. He had not gone beyond the center line of the highway. On the other hand, the oncoming car skidded as the result of the sudden application of brakes and proceeded, out of control, directly toward the bus, striking the minor plaintiff.

The driver of the bus was under no duty to anticipate the negligent conduct of the driver of the oncoming car. It was the latter's negligence which was not only the proximate but also the sole cause. That negligence was not a *dependent* intervening act; rather it was an *independent* intervening act. I am unable to conceive of anything, and no suggestion is made by the majority, which the driver of the bus, acting as a reasonably prudent man under the circumstances, should or could have done to have averted the accident. The discharge of the children was not a cause; merely a circumstance. It did not put in motion any agency by or through which the injuries were inflicted. It is impossible to envision a clearer case of an independent intervening and superseding cause. If it is concluded that it is not such cause, the legal doctrine should, and for all practical purposes will, be stricken from the books.

The judgments of the court below should be reversed and judgments entered non obstante veredicto in favor of appellant.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

To impose liability on the defendant traction company, a common carrier, *on the facts of this case,* is without precedent in this Commonwealth and has no sound basis in law.

It is conceded that a common carrier, in transporting school children of tender age, is required to use every reasonable caution and care; but to hold such a carrier guilty of lack of reasonable caution and care when its school bus operator discharges children (accompanied by a member of the school boy safety patrol), at a proper and safe place along a well travelled paved state highway, merely because the operator saw, or ought to have seen, a motor vehicle approaching on the highway, in the opposite direction and should not therefore have opened the bus door, imposes a liability on a common carrier which is unwarranted. If such a rule becomes fixed in our law, the cost to school districts for transporting school children will be greatly increased, which will ultimately fall upon the taxpayers of the Commonwealth.

The majority concede that there is no rule of law which requires that a school bus shall *never* have its doors open if a car is approaching, for the reason that in heavy traffic such a rule might make it impossible to permit children to alight for a long period of time. The question therefore narrows to the inquiry *in this particular case* whether the bus driver was negligent in opening the bus door when an automobile was approaching in the opposite direction. The question was left to the jury, as a question of fact, whereas in my view it was matter of law. The proven facts disclose that no recovery should be allowed against the traction company.

The factual situation narrated in the majority opinion is accepted as a fair and accurate statement, except those relating to the school boy patrol.

The well established rule requiring carriers to discharge their passengers in reasonably safe places extends to carriers by motor bus: *O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 166 A. 868. If a railroad train stops at a railroad station with the platform in safe condition, the railroad company discharges its duty. The fact that the train crew are aware that discharged passen-

gers, especially young passenger children, will be required to cross the tracks in order to arrive at their ultimate destination, imposes no additional duty of care by the railroad employees. Likewise, if a transit company discharges its passengers at a reasonably safe place (for example in a defined safety zone) the fact that the employees know that children passengers will be required to cross the street imposes no additional duty of care on the transit employees. Similarly, if a regular passenger motor bus stopped at a regularly designated and reasonably safe place to discharge passengers, the responsibility of the employees of the motor bus company concerning the safety of its discharged passengers would be similar to that relating to a railroad train or trolley car. There is nothing in this record which discloses that the contract of the traction company in the present case was that of portal to portal, which would require transportation of children from the school to their respective *door steps*. I therefore observe no difference in the measure of liability in any of the foregoing situations.

In some jurisdictions, in cases cited by the majority, it is not regarded as a reasonably safe place to discharge passengers of tender age at a point where the operator of a school bus knows, or should have known, of the approach of another vehicle either from the front or rear. No such case has been decided in this jurisdiction, although our decision in *Stuckwish et al. v. Hagan Corp. et al.*, 316 Pa. 513, 175 A. 381, would seem to infer this to be the rule in this Commonwealth.

Assuming, but not conceding, that such a principle ought to be engrafted upon our law (except perhaps in circumstances of unusual or obvious danger) what my learned brothers in majority ignore or minimize is the legal effect of the acts and of the status of the school boy patrolman. *This, in my opinion, is what distinguishes the present case from all of the cited authorities.* In not

one cited case does it appear that children passengers had the benefit of a caretaker, custodian or of any person charged with the duty of policing their movements across the highway after their discharge from the bus in an otherwise safe place. If each child being transported in the school bus had been accompanied by a parent, a teacher or a city or state policeman, and at each stop in a reasonably safe place any of such persons undertook to supervise the safe passage of the children across the highway, it certainly could not be regarded as the duty of the bus driver *also* to participate in the safe passage of the children across the highway. While in this case there were none of the above described individuals in charge of the children, *there was present a member of the school patrol, named by the school authorities, equipped with a long pole with a red flag attached containing the word "caution" in large white letters, whose designated duty was to police the children across the highways.* True he was but ten years of age, but the evidence discloses that he performed his duties as intelligently and efficiently as any adult person could have done.

Counsel for the appellant points out that the "schoolboy-patrol" is organized and sponsored by the American Automobile Association. The member of the patrol in the present case had been selected and instructed by the principal of the school (in no way or under the control or direction of appellant) to warn passenger children, required to cross the highway, of approaching traffic, so that they would not walk or dart into the path of an approaching vehicle. The presence of this boy, so equipped, was also to warn operators of approaching vehicles so that they should place their cars under control and proceed in a proper manner. The patrol had been instructed by the school principal to alight from the bus before the other children; to walk in front of the bus to the center of the highway, then look in both

directions for approaching vehicles; to hold his flag across the traffic lane, which would be used by approaching vehicles, as a signal for the children to cross the highway, in the event that approaching traffic was not visible; or to hold the pole with the flag affixed in front of the children as a warning to them of approaching traffic, if such a vehicle was visible. The children themselves had been instructed by their teachers to obey the warnings and instructions given them by the school boy patrolman when alighting from the bus and crossing the highway. Judicial notice should be taken of the manner of operaton of school boy patrols which exist in almost every school, to police school crossings in cities and points where children would cross highways in rural areas, in travelling to and from school in bus or other public conveyance. The presence of members of the school boy patrol, with their white "Sam Brown Belts," badges and bamboo poles with red flags affixed, is a familiar sight in almost every street and highway in the Commonwealth. All motorists are fully aware of the significance and status of these boys and their equipment. That even *national* approbation is accorded this public service is evidenced by the recent newspaper report of the complimentary address to the National Organization of School-Boy Patrols in Washington, D. C., by the United States Senator from this very district.

The record discloses that the driver of the bus, the school boy patrolman and all the children recognized and complied with the regulations. When the bus door was opened, the school boy patrolman preceded all of the children with his pole and flag. The children followed the patrolman coming out of the bus and going across the front of the bus. When the patrolman looked up and down the road and observed no vehicle approaching, he placed his pole across the road indicating that it was safe to cross. One boy, Gene Vogel, brother of the minor plaintiff, safely crossed the road and reached his home.

As Gene crossed, the patrolman observed the approaching automobile. The patrolman thereupon immediately placed his pole parallel with the road, indicating that all of the other children should stop until the vehicle had passed. The driver of the approaching vehicle, Walter Stupi, negligently approached, lost control of his car, and severely injured the minor plaintiff. At that time the minor plaintiff was directly in front of the school bus, or very *slightly* to the left thereof.

It is difficult for me to see, in these circumstances, how any liability should attach to the traction company. With full knowledge and experience concerning school boy patrol practices, as above narrated, the bus driver observed that the patrolman had preceded the children, was properly equipped, and that the children were acting in the manner in which they were instructed. He could therefore properly assume that the patrolman would perform, as he did, all of his duties with safety and efficiency. I can discern no difference than if a parent, teacher or police officer had acted in the same manner in which the patrol boy acted.

The majority attaches liability because they hold it to be negligent for the bus driver to open the door when he *sees* or *should have seen* that a car was approaching. Realistically, this would, in effect, require a bus driver to *conduct* the children across the road. The ten children, being discharged, were not all of the children in the bus. The bus carried thirty children. If the bus driver is required to furnish such *custodial* care he will necessarily be required to leave the bus, after applying the brakes, with the motor running or shut off. With known mischievous propensities of children, his absence from the bus could seriously jeopardize the lives and safety of children left in the bus.

I would reverse the judgment of the court below and enter judgment for the defendant traction company *non obstante veredicto.*