## Pantuso et al. *v.* Pittsburgh Motor Coach Company, Appellant.

Argued September 30, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*D. H. McConnell,* for appellant.

*Edward I. Roth,* with him *Leo Kostman,* for appellees.

OPINION BY MR. JUSTICE LINN, November 16, 1948:
Defendant appeals from judgments for the minor plaintiff and his mother in their suit for damages for personal injury suffered by the minor. Defendant's only complaint is that its motion for judgment n. o. v. was refused. If there is evidence from which the jury could find negligence, the judgments must be affirmed. As the plaintiffs have the verdict the evidence and inferences from it must now be taken in the sense most favorable to plaintiffs. So examined, the jury may have found the facts now to be stated. At about 1:15 on a Saturday afternoon, January 22, 1944, the minor plaintiff, aged five and a half years, accompanying John Parker, aged fifteen or sixteen, became a passenger on defendant's bus. The route traversed by the bus in the City of Pittsburgh included O'Hara street to Thackeray street, thence to Fifth Avenue, the "end of the run." The bus was

crowded; the majority of the passengers were children. A regular stop was at the corner of O'Hara and Thackeray streets where the bus would make a right turn into Thackeray street. The regular stopping place was at the curb but on this day cars were parked along the curb so that the bus could not get nearer than within six or eight feet of the curb. Instead of stopping the bus so that it stood on O'Hara street alone, the bus driver testified, ". . . in order to prevent cars passing me on the right I cut the right end in on Thackeray street," the rear end being ten or twelve feet away from the curb, and the front end six or eight feet from it. While the bus was in that position, partly turned from one street into the other, passengers were discharged. This stopping place was only a short distance from Fifth Avenue where, as the bus driver testified, ". . . the majority of them would get off at Fifth and Thackeray" not far from a "movie" theatre. The evidence is not as clear as it might be to determine whether the minor plaintiff and John Parker * stepped off the bus to allow others to alight, intending to get on again and proceed to Fifth Avenue, or whether they got off erroneously thinking they had reached the end of the run. At all events, they alighted with other passengers; they did not pass to the curb. The bus doors were closed leaving the two boys in the street, the older one knocking at the closed doors to attract the attention of the bus driver. The driver started his bus to complete the turn into Thackeray street and, while doing so, the right front wheel passed over the minor plaintiff's foot and seriously injured him. The front part of the bus was then still crowded with passengers to such an extent that the driver could not see to his right to determine whether it was safe to proceed. He testified that a passenger got on the bus

---

* This boy was not called as a witness; it was said that he was in the army.

". . . and after this man got on he said it was all right, so I closed the doors and started out very slowly as I was watching these soldiers in front of me, I didn't want any of them to step out in front of me, and I was slowly making the turn when I heard someone shout, 'Stop,' so I stopped . . ." In cross examination he said that four or five passengers were standing in the front of the bus on his right side, so that he "couldn't see the door for the people." The bus traveled from three to six feet from the time it started until it stopped, during part of which the boys walked beside it, the older one knocking on the door.

The jury could find, as it did, that it was the duty of the driver not to start his bus until he had seen that the minor plaintiff-passenger had walked to the curb from the place where he was required to alight (compare *Vogel v. Stupi et al.*, 357 Pa. 253, 53 A. 2d 542 [1947]) or had otherwise passed from the possible path of the bus. Dr. Fetter, the only eye witness, testified that "the boys were standing between the curb and the bus." Dr. Fetter was very familiar with the location in which the accident happened and was standing only four or five feet from the bus. He testified "He [the bus driver] had only moved several feet, I would say no more than a yard or a yard and a half, four or five feet, maybe six, when I noticed this bigger boy and a small boy; the big boy had the small boy by the hand and it seemed to me they were trying to get back on the bus. The bigger boy was rapping on the side of the door. The door happens to be in front of the wheel. I believe that type of bus has the motor in the rear; I don't know, but they were trying to get back on the bus, it seemed to me, and the right front wheel, it was going around that turn, and the little boy just got his foot and it ran right over it."

The standard of a bus driver's duty with respect to a minor passenger was recently considered in *Vogel v. Stupi et al.*, 357 Pa. 253, 53 A. 2d 542 (1947), in which

a common carrier of passengers was held liable for injuries to a child passenger discharged on a public highway at a place found by the jury not to have been reasonably safe in the circumstances. The following rule was quoted: "In respect of a passenger who is a minor, the carrier is bound to exercise a high degree of care, and, as to a young child, it has been asserted that the carrier owes the highest practical degree of care on the part of its employees in carrying out the contract of carriage, and that the age of such child is a factor which must be considered in the measurement of such care." In *O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251, 166 A. 868 (1933), where a bus stopped to allow a passenger to alight at an unsafe place, the rule was stated thus: " 'A common carrier for hire owes to its passengers the highest degree of care and diligence in carrying them to their destination and [in] enabling them to alight safely' (Hughes v. Pittsburgh Transportation Co., 300 Pa. 55) and to avoid any possible danger while doing so: Lyons v. Pitts. Rys. Co., 301 Pa. 499. It is the duty of a carrier of passengers to set them down at the terminus of their journey, and to afford them a sufficient time to alight in safety."

Judgment n. o. v. can only be entered in a clear case. It was the duty of the jury to say whether in the circumstances the bus driver acted reasonably in starting his bus when he couldn't see what the conditions immediately outside the door were. He knew that children had just alighted in the street away from the curb in traffic conditions which confronted him. The jury might very properly say that he should not have relied, as he testified he did, on a man's making the ambiguous statement "all clear," but should himself have looked where he was about to drive his bus. By "all clear" the man who was standing in the bus may have meant that the driver could close the doors without injuring the standing passengers.

*Duffy v. P. R. T. Co.*, 291 Pa. 564, 140 A. 496 (1928), and *Fittipaldi v. P. R. T. Co.*, 107 Pa. Superior Ct. 385,

163 A. 397 (1932), relied on by appellant, were cases of adult contributory negligence; the court could not declare this minor plaintiff guilty of contributory negligence.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

The driver of a bus, after having safely discharged a five and one-half year old boy in the custody of another fifteen years of age, is under no duty to anticipate that they will remain out of the possible line of vision of the driver until after passengers have entered, the doors of the bus have been closed, the forward motion of the bus begun, and then run along the side of the bus in an attempt to re-enter. No decision has ever imposed such an unreasonable duty, and the cases cited in the majority opinion reject the existence rather than imposition of such duty.

The majority opinion fails to recognize and give effect to several undenied and well established facts: appellee had alighted safely at a point which, while not the usual stopping place for the bus, was, nevertheless, required under the circumstances, and was calculated to best assure the safety of the passengers as they alighted. Most important of all is the fact that when the forward motion of the bus began appellee was standing to the rear of the door and at the side of the bus and, thereafter with his fifteen year old companion, he ran along the side of the bus.

What occurred was described by only one eye witness, a Dr. Russell M. Fetter, who was standing near the corner of O'Hara and Thackery Streets. His testimony on direct and cross examination clearly reveals that he first noticed the boys walking after the bus, the older boy holding the hand of the younger. ". . . the bigger boy was rapping on the bus". ". . . as soon as the

bus started out they started after him . . ." The bus had only moved several feet "maybe six". After a noon recess, Dr. Fetter was called for re-direct examination. He then testified that he had seen the boys get off the bus along with other passengers. He stated: ". . . after the boys got off the bus they were standing by the door there. The rest of the passengers got off and the door closed and the bus started out. The bigger boy had the smaller boy by the hand and was rapping on the side of the bus. The bus had started out, and when he got to the turn the little boy's foot got caught by the right front wheel and ran over it."

On re-cross examination he was asked: "Q. The bus had started and the door was closed before the boys rapped on the door; is that right? A. Yes. . . . Q. They didn't go to the curb at all; is that what you mean? A. That is right."

There is no evidence in the record which warrants the statement in the majority opinion that from the evidence adduced the jury may have found: "The bus doors were closed leaving the two boys in the street, the older one knocking at the closed doors to attract the attention of the bus driver. The driver started his bus to complete the turn into Thackeray Street and, while doing so, the right front wheel passed over the minor plaintiff's foot and seriously injured him."

A jury cannot assume facts contrary to the evidence and base a verdict thereon. Nor has any decision of this Court been predicated upon assumptions and inferences contrary to the evidence. Whether appellant could have been found guilty of negligence depended upon whether the older boy was standing in front of the door and attempting to gain entrance by rapping thereon at the time the doors were closed and before the bus proceeded forward, or whether the boys had been standing to the rear of the door out of the driver's possible line of vision, and *after* the doors were closed and *after* the bus had started, the older boy, having the smaller boy by the hand,

ran *after* the bus and rapped on the door. The testimony of Dr. Fetter is the sole evidence in that regard and clearly does not in any way support the assumptions relied upon by the majority opinion.

The evidence viewed most favorably to appellee does not warrant a finding that appellant had done or left undone any act which it was under a duty to do or refrain from doing under the circumstances. It is true that a very high degree of care is imposed upon those transporting children. See *Vogel v. Stupi,* 357 Pa. 253, 258-261, 53 A. 2d 542. A common carrier's duty is not only to carry its passengers safely but an opportunity must be afforded them to alight and pass out of danger : *Lyons v. Pittsburgh Railways Co.,* 301 Pa. 499, 501, 152 A. 687. In *Hughes v. Pittsburgh Transportation Co.,* 300 Pa. 55, 58, 150 A. 153, 154, it was held that a transportation company owed a passenger for hire "the highest degree of care and diligence in carrying her to her destination and enabling her to alight safely : McBride v. McNally, 243 Pa. 206 ; Bickley v. P. & R. Ry. Co., 257 Pa. 369 ; Johnston v. Director General, 286 Pa. 166, 169". See *O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 166 A. 868.

There is no evidence in the instant case that the driver knew or had any reason to surmise that appellee and his older companion were standing close to the side of the bus to the rear of the door. He had no reason to believe that the relationship of carrier and passenger had not terminated. There is not a scintilla of evidence which would warrant a finding that ample opportunity was not afforded appellee to alight safely and step out of the possible path of the body of the bus when it completed negotiating the turn into Thackery Street. In *Duffy v. Philadelphia Rapid Transit Co.,* 291 Pa. 564, 566, 140 A. 496, 497, it was said: "When plaintiff was safely landed in the cartway, with ample opportunity to step away from the car and out of danger, she ceased to be a passenger : Perret et ux. v. George et al., Receivers, 286 Pa. 221, 224."

472

*Vogel v. Stupi,* supra, involved transportation of school children. The bus was hired for that specific purpose. In view of that relationship a majority of this Court held that the driver of the bus was under a duty to refrain from discharging the children in the face of possible oncoming dangers. In *O'Malley v. Laurel Line Bus Co.,* supra, the motorman, on a dark and stormy night, stopped his bus at a point 250 feet from the regular bus stop. Instead of being on the right side of the road and near the curb, the bus was in the center of the road and 16 feet from the curb. The passengers were not advised of the foregoing facts and, because of the inclement weather, they were not aware of them. The plaintiff was struck by an automobile traveling in a direction opposite to that of the bus immediately after he stepped from the bus. That case is clearly inapplicable here. This Court emphasized the fact that (p. 256) : "Here, plaintiff was discharged at an 'obviously perilous point.' " That is not true in the instant case. In *Lyons v. Pittsburgh Railways Co.,* supra, a trolley had been stopped at the beginning of a curve and plaintiff, a passenger, was required to alight at a point where her path to the curb was temporarily blocked by automobiles. The trolley proceeded immediately after discharging the plaintiff and she was knocked down and injured when caught by the overhang of the rear as it swung around the curve. It was held that, having knowledge of the dangerous and perilous position in which the passengers had been placed by his own act, the operator was negligent in failing to afford plaintiff passenger a reasonable time within which to reach a point of safety. In the instant case there is no evidence to support a finding that appellee was not afforded reasonable time to reach the curb safely. It is clear, therefore, that all of the cases cited in the majority opinion are factually dissimilar and the holding of the cases inapposite.

*Duffy v. Philadelphia Rapid Transit Co.,* supra, is distinguished by the majority opinion as a case of adult

contributory negligence. A careful reading of the opinion of this Court, however, shows clearly that this Court held there was no actionable negligence. It was said (p. 566): ". . . 'the state of the record requires the testimony of the plaintiff, with all proper inferences deducible therefrom, to be construed in the light most favorable to her, but it is still for the court to say if, taken as true, actionable negligence by defendant has been shown' . . .". The opinion proceeds to point out that those in charge of the car were not bound to anticipate or guard against her actions. Mr. Justice WALLING, speaking for this Court, said (p. 566): "They were bound to afford her time and opportunity to alight, *but not bound to continue stationary to see in which direction she would go.* Plaintiff is unable to give any account of how the accident happened. Her injury did not result from any defect in the means of transportation, so, whether treated as a passenger or pedestrian, the accident created no presumption of negligence: . . .". (Italics supplied.) Here, appellee and Parker did alight safely, but remained standing at the side of the bus and to the rear of the door until after the doors had been closed and the forward motion of the bus resumed.

The mere fact of an accident does not establish that a duty to the injured person has been breached. Nor does the fact that the injured person is a minor five and one-half years of age, and, therefore, not chargeable with contributory negligence, create a duty. The positive evidence establishes that appellant's driver operated the bus with the greatest of care under the circumstances, that appellee alighted safely and was afforded ample opportunity to remove himself from any possible orbit of danger which might exist by reason of the fact that the bus was turning to its right, and that the accident did not result from any negligence of appellant's driver.

The judgment of the court below should be reversed and here entered for appellant.