## Turner v. Yourga

*George Hardy Rowley*, for plaintiffs.
*Albert E. Acker*, for defendants.
*David W. Ketler*, for additional defendants.

RODGERS, P. J., March 10, 1958.—On January 19, 1956, at about 4:15 p.m., a school bus owned by O. D. Anderson and driven by Charles Coryea, additional defendants in this action, stopped on Pennsylvania State Highway No. 18, facing in a southerly direction approximately two miles south of the borough limits of the Borough of Greenville, immediately opposite the residence of plaintiffs in this action. At the time of the stopping of the school bus, a wet snow was falling and the roads were very slippery. Visibility, however, was sufficient to permit the bus driver, Charles Coryea, to have vision through his side view mirror to the north in the direction of Greenville to the first bend to the rear of the bus, a distance of 580 feet.

After the school bus came to a stop, the driver looked into his rear view mirror and noticed an automobile approaching from the rear. He then waited for the automobile from the rear to come up behind him and stop.

After several children alighted from the bus, plaintiff, James L. Turner, climbed down out of the bus onto the highway and stood next to the right front corner of the bus, awaiting instructions from the driver to cross the road. At this time, the driver had no windows open except a small side window, which was not sufficiently large or in a satisfactory position to give oral notice to the minor plaintiff as he crossed the road.

The driver testified that he checked the traffic, front and rear, and that there was nothing coming. He then signaled the minor plaintiff across the road. The minor plaintiff walked at a normal pace. When he arrived at the front left corner of the bus, the driver for the first time heard a horn. He glanced in his rear view mirror, turned around and glanced out of the side

window and found that defendant's truck was right beside the bus. The additional defendant sounded his horn and tried to stop plaintiff from going on across, but the minor plaintiff had already advanced to the center of the northbound lane when he saw the truck about the same time and froze. The truck struck the boy and caused the damages complained of. The bus driver did not look back once plaintiff started across. The driver knew that he had a duty to get the child safely across the road. He appreciated that the minor plaintiff was but seven years of age. The driver did not know whether or not the minor plaintiff looked up or down the road before crossing into the southbound lane of traffic.

The driver and all of his passengers, which included the minor plaintiff, were informed by the driver that if at any time he honked his horn as they were crossing the highway, they were to return toward the bus. This was the rule, even though the child may have passed beyond the center line of the opposite lane of traffic.

The minor plaintiff was admitted to the Greenville Hospital following the accident where he was treated by Dr. Baker and Dr. Diehl, of Greenville. It was testified by Dr. Baker that he had recently examined the minor plaintiff prior to the trial and that the minor plaintiff was a normal boy in every respect and all of the tests given were negative with the possible exception of some slight pain caused by calcification about the head of the femur. The doctor further testified that there would be no disability whatsoever to the minor plaintiff and that, as far as the doctor could testify, the boy would in future years be able to carry on as any normal boy who had not been in such an accident. This would include his ability to do normal playing, going to school, getting a job and doing normal work.

Dr. Diehl who testified for plaintiff stated that he did not feel that there will be any future effects from the accident. He did state, however, that he should receive an examination about twice a year for three or four years to determine whether or not there would be any future effects from the accident. At the time of the trial, the doctor testified that as far as he knew, the minor plaintiff would be able to go through his future life and perform his services to the community and to himself as any normal individual.

A verdict was rendered in favor of the minor plaintiff in the amount of $2,500 and in favor of Lois Betty Turner and James Turner in the amount of $3,290.

The matter is now before the court on motions for a new trial and for judgment n. o. v.

Defendant Yourga contends that the court erred in refusing defendant's point of charge 6 which read:

"The bus driver, Charles Coryea was not exercising the highest practical degree of care under the circumstances if he relied on the fact that traffic approaching in either direction would stop."

In considering this matter it is important to note the exact language of the requested point. As requested, the point would have denied defendant Coryea the right to any reliance whatsoever on the rule of law requiring the approaching driver to stop when approaching the school bus. This becomes increasingly important when we consider that this approaching driver not only drove past the stopped school bus but also drove around a car which was properly stopped behind the bus. A parallel rule of law is that which concerns the reliance which may be put on a green light by a driver approaching an intersection. This rule, which has been suggested to and affirmed in this court recently, states:

"When one has the right of way by virtue of being on a through street or having a green light he must

not be held to the *exact degree of care* that would have been required of him had there been no light or stop sign in his favor at the intersection": Cericola v. Redmond, 182 Pa. Superior Ct. 19, 23.

It is simply not the law that a driver is not permitted to rely to any degree on the fact that traffic approaching in either direction would stop in accordance with the law.

In addition, it is reversible error to refuse a party's requested instruction only when the instruction is a correct statement of the law, material to the issue, warranted by the evidence and not covered by the general charge.

"The refusal to give a point or charge is not error, even though such point or charge states a correct rule of law, if it has no specific application to the precise issue which is being tried": 9 Standard Pa. Practice 429.

There is no evidence in this case that the bus driver relied on the fact that traffic coming from either direction would stop. The driver testified repeatedly that before opening the door he checked to see if there was any traffic and saw that traffic had stopped to the rear, and that before sending the Turner boy across the road he checked again, front and rear, and nothing was coming. Therefore, he kept his eyes on the boy to see that he did not slip on the pavement which was icy.

Nor is there any evidence that the bus driver knew or, as a reasonable man, should have known that a truck was approaching from the rear. On the contrary, the evidence is that he looked to the rear before motioning the boy across, that he could see to the rear, a distance of from 450 to 580 feet, and that nothing was coming. Thereafter he kept his eyes on the boy, believing that the greatest danger was from the possibility of his falling on the road. It was for the jury

to decide whether, in view of the slippery condition of the highway, the driver was negligent in watching the boy rather than the highway to the rear once the boy started across.

To have affirmed defendant's sixth point would have introduced an element into the case not fairly warranted by the evidence.

This jury was instructed:

"With reference to the bus driver, Coryea, we have a different standard of care. The ordinary driver is required to use reasonable care under the circumstances. Our Courts have said this about bus drivers carrying school children: the traction company—bus company—in carrying children of tender years to and from school are bound to use every reasonable caution and care for the safety of these children, either while they are riding in the bus or alighting from the bus or leaving the immediate vicinity of the bus at the completion of their journey. You may ask yourself . . . did the bus driver meet the standard of using the highest practical degree of care in discharging the children? Did he take every reasonable precaution as he stopped the bus, opened the door, and let the children out, and as they stood in front of the bus? . . . Should he have looked to the rear as the boy passed the front of the bus? There is no rule of law making the bus driver an absolute guarantor of the safety of his passengers. He is required to use, rather, the highest practical degree of care under the circumstances. . . . Therefore, the bus driver is bound to use the highest feasible—or usable or workable—degree of care."

This charge conforms substantially with that approved by our Supreme Court in Vogel v. Stupi, 357 Pa. 253, which was decided prior to the passage of the statute requiring on-coming drivers to stop for school buses. We believe the Vogel case is as far as our

courts have gone in requiring special care by our school bus drivers and that it does not justify a charge such as requested here.

We believe that the charge as given is a fair statement of the duty of the bus driver under these circumstances and that granting of the requested point 6 would have been an unwarranted extension of the law on the duty of the bus operator.

Defendant Yourga then next contends that the court erred "In affirming additional defendant's points for charge no. 4, which reads as follows, 'where one, without fault of his own, is placed in a position of great mental stress or sudden emergency, the same degree of judgment and care is not required of him as is required of one who is acting under normal conditions. The test to be applied is whether or not the person in such a position of great mental stress or sudden emergency did or attempted to do what a reasonably prudent person would have done under the same or similar circumstances. If, therefore, you find that Charles Coryea, without fault of his own, was placed in a position of great mental stress or sudden emergency, and that while in such a position he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances, then he was not negligent'."

One of the elements in this case which was laboriously developed and argued at length by defendants' counsel was the proposition that Coryea, instead of attempting to warn the Turner boy of the approaching truck and to call him back from his position of danger by sounding his horn, should have taken no action at all because blowing the horn may have confused the boy.

It seems obvious that this was a situation in which the court was obliged to instruct the jury in regard to the standard of care required of one who is con-

fronted by a sudden emergency not of his own creation. The point as affirmed leaves to the jury the determination of whether the emergency was created by Coryea and was, in fact, required because of defendant's theory and presentation of the case.

The verdict for the parents was not excessive. A verdict in the amount of $2,500 was returned for the injured boy and a verdict of $3,290 for his parents. In view of his injuries, the boy's verdict was modest indeed. He sustained four fractures of the pelvis, trauma to the urinary tract, contusions to the forehead, the soft tissue of the abdomen and internal organs, a cerebral concussion and nervous shock. At the time of the trial, 16 months after the accident, calcification was still present about the head of the femur causing some tenderness which was expected to continue for six or eight months. He was still very nervous, and his head injury would require periodic examinations by his physician for a period of an additional three or four years.

Defendants do not attack the verdict for the minor but contend that the verdict of his parents was excessive. We might agree that the verdict for the parents seems somewhat disproportionate. But the fact that a verdict in a derivative action is disproportionate to the verdict awarded to the injured party does not require a new trial so long as the verdict itself is not excessive: MacLeay v. Beckwith Machine Co., 131 Pa. Superior Ct. 338. Only when compared to the minor's verdict does the verdict for the parents seem large. The parents had incurred out-of-pocket expenses totaling $790. They would have to continue to provide medical attention for their son for three or four more years because of the accident. And, even though the minor was but seven and one-half years of age when injured, the parents were entitled to compensation for loss of his services.

The jury gave both the boy and his parents $2,500 each and added the past expenses to the parents' verdict. In evaluating claims of this sort, lawyers are accustomed to think in terms of the total of the probable verdicts for the minor and his parents. This is the practical approach, and the fact that the jury used it should not require a new trial. The sum of $5,790 certainly approximates the fair value of all of the claims and, in fact, falls in between the offers of defendants and the demands of plaintiffs. Defendant is not being required to pay more than fair compensation. It makes no real difference to him or to anyone else what division is made between the minor and his parents once the total of the amounts to be awarded is determined. In such case the courts have quite properly added the verdicts together and, if the total was not excessive, permitted the verdicts to stand: Cook v. Miller Transport Co., 319 Pa. 85, and Fincke v. Crichley, 177 Pa. Superior Ct. 61.

In Cook v. Miller Transport Co., supra, the jury awarded the minor plaintiff $8,500 and his parents $3,000. The Supreme Court adopted the language of the court below, at page 89, in which it said that the verdict for the parents might be a little high:

". . . but it is not such as to shock our conscience, particularly in view of the fact that in so far as the boy is concerned a much higher verdict would have been justified. We would have perferred a verdict of $1,500 for the parents and $9,500 for the boy, but the jury has stated the figures and we cannot say that they have been unreasonable. The total of $11,500 is certainly not excessive."

The jury in the instant case sent a written question to the court asking whether they could recommend that part of the minor's verdict be paid to a guardian for him. The trial judge answered in writing that this was not necessary but would be taken care of by

operation of law. It seems quite apparent that the jury did not want to give all of the minor's share to a guardian and, therefore, decreased the minor's verdict and correspondingly increased the parents' award. The figures might suggest that verdicts totaling $5,000, plus the expenses, had been agreed upon and that rather than put the entire $5,000 in the hands of a guardian, half of it was awarded to the parents. If the jury made any error, it was in apportioning the amounts awarded. This harmed no one, since it put no additional burden on defendants.

### Order

And now, March 10, 1958, the motions for a new trial and for judgment n. o. v. are denied.

### Exceptions

Now, March 10, 1958, to the foregoing order of the court, counsel for defendants excepts and, eo die, a bill of exceptions is sealed for defendants, John H. Yourga, d. b. a. John H. Yourga Trucking, and Howard Gray.