## Penneys v. Segal

Before McDevitt, P. J., Barbieri and Spaeth, JJ.

*Israel Packel*, for plaintiff.

*Edward Greer*, for defendant.

McDEVITT, P. J., March 29, 1965.—Charles Penneys, plaintiff, brought an action in assumpsit, to recover on six promissory notes, in a total amount of $27,500 made by defendant, Samuel Segal, Jr., and

signed by him, payable to the order of Daoud Brothers. All of the notes were dated November 9, 1953, but were payable on successive dates as follows: One for $2,500 due April 15, 1954; the remaining five for $5,000 each, due, respectively, April 19, April 26, May 3, May 10 and May 17, 1954. All of the notes were endorsed in blank by the payee, Daoud Brothers, and were delivered to plaintiff, Charles H. Penneys, by Mrs. Maud Daoud.

This case was previously tried before President Judge Byron A. Milner resulting in a verdict for defendant. In an opinion filed May 7, 1962, by Judge Milner, plaintiff's motion for judgment n. o. v. was denied, but his motion for new trial was granted on the ground that the court's charge did not properly instruct the jury as to the burden of proof. The Supreme Court, on appeal, affirmed the award of the new trial: Penneys v. Segal, 410 Pa. 308 (1963).

On retrial from October 7, 1964, to October 9, 1964, the jury returned a verdict for defendant, and plaintiff filed this motion for judgment non obstante verdicto. The motion was argued before the court en banc pursuant to plaintiff's written request:[1] Special Rule VII, Supreme Court of Pennsylvania, effective October 1, 1963.

Several cardinal principles must be kept in mind when considering a party's motion for judgment n. o. v. First, the question to be determined is whether, on the whole record, plaintiff's point for binding instructions should have been granted: Commonwealth of Pennsylvania, Department of Highways v. Eldridge,

---

[1] Rule VII:

"In all cases . . . a single judge shall hear and decide all motions, petitions and arguments on any argument list of civil . . . cases, however they may arise, including . . . motions for new trial and judgment n.o.v., unless the trial judge himself orders a court en banc or one of the parties *requests it in writing.*"

408 Pa. 391 (1962); Pantuso v. Pittsburgh Motor Coach Company, 360 Pa. 464, 465 (1948); Strawbridge v. Hawthorne, 47 Pa. Superior Ct. 647 (1911); Musser v. Shenk, 192 Pa. Superior Ct. 471 (1960). Second, the evidence in the record, and all reasonable inferences therefrom, must be considered in the light most favorable to the verdict winner: Pantuso v. Pittsburgh Motor Coach Company, 360 Pa. 464 (1948); Kissinger v. Pittsburgh Railways Company, 119 Pa. Superior Ct. 110, 112 (1935). Judgment n. o. v. will be entered only in a clear case, involving no substantial issues of fact resolved by the jury's verdict. See Dougherty v. Philadelphia National Bank, 408 Pa. 342, 344 (1962); Readinger v. Gottschall, 201 Pa. Superior Ct. 134 (1963).

Plaintiff submitted a comprehensive and well-organized brief in support of his motion. In answer thereto, defendant cited only the opinion of the Supreme Court rendered on the appeal from the award of the new trial. Denial of the motion for judgment n. o. v. by Judge Milner was not appealed, and was not argued on appeal. Therefore, the Supreme Court's opinion in the prior case is not determinative of the issues currently raised: Reamer's Estate, 331 Pa. 117, 122 (1938). Cf. Drummond v. Drummond, 414 Pa. 548 (1964). Only those issues decided in a prior appeal are the law of the case on retrial and no others. The fact that plaintiff did not appeal from the denial of his motion for judgment n. o. v. does not foreclose his raising the same question at this time: Tupponce v. Pennsylvania Railroad Company, 358 Pa. 589, 591, (1948). Thus, we proceed to a consideration of the evidence determinative of the issues raised by plaintiff's motion.

Plaintiff introduced the notes in issue, coupled with the admissions in the pleadings, and rested. By this evidence he established a prima facie right to recover,

it being conceded that the notes were regular on their face and plaintiff received delivery of them before they were overdue. The Negotiable Instruments Law[2] of May 16, 1901, P. L. 194, sec. 59, 56 PS §139, provides that "every holder is deemed prima facie, to be a holder in due course, . . ." Defendant then came forward in an attempt to rebut the presumption raised in plaintiff's favor. Segal and Mrs. Maud Daoud, by deposition, who for all practical purposes was Daoud Brothers, testified. Plaintiff, Penneys, then testified in rebuttal.

The evidence established that the transaction was initiated when Mrs. Daoud called defendant by telephone and suggested he purchase certain jewelry in the amount of $65,000. Her purpose was to raise necessary cash to continue the business of Daoud Brothers. In consequence of this communication, Segal delivered his promissory notes in the amount of $65,000 to Mrs. Daoud, indicating to her that he would take so much jewelry as would equal the face amount of the notes, which Mrs. Daoud could have discounted. Mrs. Daoud discounted $37,500 of the notes to Trenton Trust Company, but that bank would take no more. There was some question as to whether or not the notes were delivered to Maud Daoud with the understanding between her and Segal being that they could only be discounted at the Trenton Trust Company bank. On this issue, both Mrs. Daoud's testimony and Segal's, though not as clear as one would like, are in substantial agreement and the jury could reasonably have found that the $65,000 in notes could be discounted by Mrs. Daoud only at Trenton Trust Company. Furthermore, it is quite clear that the jury accepted the evidence that

---

[2] It was agreed to by the parties that the Negotiable Instruments Law governs this action inasmuch as the notes were executed and the operative facts occurred prior to July 1, 1964, the effective date of the Uniform Commercial Code.

Segal received only $37,500 in jewelry in return for the notes on the basis that only notes in that amount were discounted with Trenton Trust Company.

The jury found that Segal received no value or consideration for the $27,500 in notes on which this suit is based. When Segal selected $37,500 in jewelry, he requested the return of the balance of the notes. However, Mrs. Daoud had endorsed the notes to Penneys, requesting that he have them discounted for her and informing him that Segal had not received anything for the notes. She told Segal she would get them back from Penneys and return them to Segal. Mrs. Daoud asked for the return of the notes from Penneys but never obtained them from Penneys.

Penneys testified that he had initially received the notes from Mrs. Daoud for the purpose of having them discounted for her. However, at a later date, he agreed to cancel a preexisting obligation owing from Mrs. Daoud to Penneys, evidenced by a series of checks totaling $28,000 which Penneys held and which he had not deposited. He testified that he surrendered these checks in return for the $27,500 in notes plus a $500 check. Penneys said that when he delivered the $28,000 in checks, he did not know of Segal's interest or the nature of the transactions between Daoud and Segal. In this, he is contradicted by Mrs. Daoud.

There was additional evidence of the close connection between Penneys and Daoud Brothers. This evidence indicated a course of dealings encompassing several years, and money transfers of $1,000,000 or more. Furthermore, Daoud Brothers' bookkeeper took his instructions from Penneys, made book entries at his direction and Penneys held blank checks of Daoud Brothers with freedom to fill in the amounts at his own discretion. It also appears that Segal was friendly with Mrs. Daoud and knew Penneys, and that he had transacted business with Daoud Brothers over a long

period of time and in considerable volume. However, the suggestion that Segal was an accommodation party has no true basis in the evidence. Segal purchased the jewelry as a favor, or as an "accommodation" to provide Daoud Brothers with ready cash, but only on the basis that he, Segal, would receive jewelry of equivalent value in return. "An Accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and *for the purpose of lending his name to some other person*": Negotiable Instruments Law, sec. 29, 56 PS §66. The evidence does not disclose such a purpose as that required by the statute.[3] (Italics supplied.)

---

[3] The testimony elicited on this point by plaintiff's attorney on crossexamination of Segal was as follows:

"Q. Did you ever sign notes merely to do the Daoud Brothers a favor so they can use those notes and borrow money on them?

"A. Not to my knowledge.

"Q. To your knowledge, you never acted as an accommodation maker—if you know that term—for Daoud Brothers?

"A. No.

"Q. You don't know the term, is that it?

"A. No, I don't know the term.

"Q. Isn't it a fact that at various times you signed notes for Daoud Brothers with the understanding that the Daoud Brothers could transfer these notes to other persons even though you were not getting any goods, furniture or jewelry for those notes?

"A. That's not true.

"Q. In other words, you never loaned your credit to Daoud Brothers except in anticipation of purchases?

"A. That's right.

"Q. Did you realize that when you signed the note and gave it to Daoud Brothers in anticipation of a purchase that they could use that note even though they made no deliveries to you?

"A. I didn't realize it."

An accommodation maker may not successfully plead lack of consideration as a defense: Putnam v. Ensign Oil Co., 272 Pa. 301, 306 (1922). This testimony is a clear negation that these notes were given by Segal to Daoud Brothers in such a capacity or for such a purpose.

The questions on this motion resolve themselves to these: Was there proof of such defect in Mrs. Daoud's title as to cast the burden of proving that plaintiff was a holder in due course upon plaintiff,[4] and, if so, could the jury find that plaintiff, in the circumstances, was not a holder in due course?

Section 59 of the Negotiable Instruments Law, 56 PS §139, provides, in pertinent part, that "Every holder is deemed prima facie, to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." Section 55 of Negotiable Instruments Law, 56 PS §135, provides, in pertinent part, that "The title of a person who negotiates an instrument is defective , within the meaning of this act, . . . when he negotiates it *in breach of faith* or under such circumstances as amount to a fraud." Thus, if Maud Daoud negotiated these $27,500 in notes to Penneys in contravention of an agreement between herself and Segal that they could be discounted only at a bank or at the Trenton Trust Company, there would be a defect in her title. Section 28 of the Negotiable Instruments Law, 56 PS §65, provides that the "Absence or failure of

---

[4] Of course, in defendant's case there was evidence introduced from which the jury could have found that plaintiff was not a holder in due course. This would have been important had the defendant failed to prove a defect in Daoud Brothers' title, since, in such case, the burden of proof would be upon defendant to show that plaintiff was not a holder in due course. That is, defendant would have the burden of proving that plaintiff knew that Daoud Brothers had not given value for the $27,500 in notes, or that plaintiff had not taken these notes in "good faith". This follows from a fair reading of section 55 of the Negotiable Instruments Law. Furthermore, as quoted in the text of this opinion, section 28 of the N.I.L. makes absence or failure of consideration a defense as to one who is not a holder in due course.

consideration is a matter of defense as against any person *not a holder in due course,* and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise." Of course, had the jury found that Penneys was a holder in due course, then absence or failure of consideration would be no defense as against him: Putnam v. Ensign Oil Co., 272 Pa. 301 (1922).

The defense is based upon Segal's contention that the notes were delivered to Penneys for the sole purpose of having them discounted for Mrs. Daoud. This he admitted in his own testimony, qualifying it by stating that he subsequently gave value and that at the time he gave value, he, Penneys, had no knowledge of any defense or infirmity in Mrs. Daoud's title.

Clearly, as between Mrs. Daoud and Segal, Segal was not liable on the notes. See First National Bank of Homestead v. Lee, 223 Pa. 305 (1909) ; Terre Hill National Bank v. Sensenig, 95 Pa. Superior Ct. 368 (1929). Therefore, when Penneys took the notes from Mrs. Daoud for the purpose of having them discounted, and if at any time thereafter, but before he gave value therefor, he obtained knowledge of Mrs. Daoud's defect in title, or of the defense available to Segal as against Mrs. Daoud, he may not prevail in this action. Of significance in this point is Mrs. Daoud's testimony:

"Q. Did Mr. Penneys discount those notes?

"A. No, he did not.

"Q. Did you receive any money from Mr. Penneys for those notes?

"A. I did not receive any money for those notes, no I did not.

"Q. Did Mr. Penneys return the notes to you?

"A. No, he did not.

"Q. What, if any effort was made to get the notes back from Mr. Penneys?

"A. Well, I told him at the time. I said, 'Charles, he isn't taking any merchandise for the notes, and since you cannot discount them, I would like very much to return them!' He said, 'Let me keep them for a while and then I will return them to you, as soon as possible.'"

She further testified that, as to the checks of Daoud Brothers returned to the firm, and the $500 check received by Penneys to make up the difference between the $27,500 in notes and $28,000 in checks, she had no knowledge of such transfer. Furthermore, any such transfer was done at Mr. Penneys' direction by her bookkeeper in Mr. Penneys' handling of her books of account.[5] Mr. Penneys' testimony corroborates in many particulars, the testimony of Segal and Mrs. Daoud; particularly as to the fact that he received the notes, initially at least, solely for the purpose of having them discounted for Daoud Brothers, and not on his own account.

From the jury's verdict, it is apparent they resolved the testimony and the reasonable inferences therefrom

---

[5] In Horrell v. Reeves, 72 Pa. Superior Ct. 129 (1919), the Superior Court said that once a defect in plaintiff's title has been established, he must prove that he, plaintiff, is a holder in due course or derived his title from such a holder. Plaintiff asserts he gave value for these notes, in the form of a return and cancellation of some $28,000 in checks evidencing a preexisting obligation. From the testimony of Mrs. Daoud and Mr. Penneys, the jury might well have doubted the fact that such consideration had actually been paid or given in return for these notes. The dispute in this area largely reduced itself to a question of credibility since the oral testimony of both Daoud and Penneys was in issue. Horrell said that when the establishment of a question of fact depends upon oral testimony, it is for the jury to determine whether the fact in dispute has been established. But even if this evidence was not sufficiently persuasive to establish that Penneys did not give value, it certainly, taken in conjunction that the other evidence in the case, supports defendant's contention that plaintiff had not acted in good faith in this transaction.

in favor of defendant, finding that a defect or infirmity in the title to the notes existed as set forth in section 55 of the Negotiable Instruments Law set forth above. The factual dispute being thus resolved, this case is controlled by First National Bank of New Jersey v. Cattie Bros., 285 Pa. 202 (1926). See also Horrell v. Reeves & Nelson, 72 Pa. Superior Ct. 129 (1919).

Plaintiff seeks to salvage his claim by asserting that he was a holder in due course. Section 52 of the Negotiable Instruments Law, 56 PS §132, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it *in good faith* and for value.

"4. That at the time it was negotiable to him *he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.*" (Italics supplied.)

From the evidence, the jury could have found, as testified by Maud Daoud, that the notes came into her possession for a specific or special purpose, and that she delivered them to Penneys for a specific or special purpose. Also, that Penneys had knowledge of the failure of Segal to receive any jewelry for the $27,500 in notes or any other thing of value and that Segal received no consideration for these notes. Finally, from all the circumstances, the jury could have found that Penneys, by his close association and connection with Daoud Brothers, had knowledge of facts which would place him on notice of the defect in Daoud's title. The question of Penney's knowledge, and whether he was a purchaser of these notes for value and in good faith, was for the jury. In the face of such a factual issue determinative of the rights of the parties, the court

could not properly grant plaintiff's request for binding instructions. Since there was a factual issue which was resolved by the jury, plaintiff's motion for judgment n. o. v. must accordingly be denied.