## Putnam, Appellant, v. Ensign Oil Co.

*Promissory notes — Corporation as maker — Note held in due course—Accommodation notes—Defenses—Want of consideration —Note executed in violation of by-laws—Act of May 16, 1901, P. L. 194—Important suggested change in the law.*

1. In an action by the holder of a promissory note against the maker, a corporation, where the plaintiff avers in his statement that the notes were endorsed and delivered to his transferor before maturity, and that he is the holder thereof, and proves the execution of the notes and endorsements by intervening endorsees, the notes are properly admissible in evidence.

2. It is not necessary, in such case, for plaintiff to aver that his transferor took the notes in good faith for value, or that it was a holder thereof in due course, and that this should be proved, inas-

much as section 59 of the Negotiable Instruments Act of May 16, 1901, P. L. 201, provides that "every holder is deemed prima facie to be a holder in due course."

3. The holder in due course takes the instrument free from a defective title of prior parties, and free from the defenses available to prior parties among themselves.

4. A negotiable instrument gives substantial rights to one who derives his title through a holder in due course, provided the former has not been guilty of any fraud or illegal act.

5. If, however, it appears on the defense that "the title of any person who has negotiated the instrument was defective," the law raises a presumption in the maker's favor, and the burden is then shifted to the holder to show that he, or some one under whom he claims, was a holder in due course.

6. It is not necessary for defendant to show knowledge of the holder in addition to defective title, but a defense of nonliability will not be established solely by this evidence, for the jury must find the holder had knowledge of the defect, and this it must do from the evidence so far submitted, or plaintiff may show he did not have such knowledge.

7. As against a holder in due course, a corporation maker of a promissory note cannot set up the defense that the note was given as an accommodation and without consideration. Section 59 of the Negotiable Instruments Act applies only to defective title, and not to such matter.

8. In an action against a corporation maker of a promissory note, proof that the note was issued by the officers of the company in violation of a by-law, is a complete defense, unless it appears that (a) the corporation received a benefit from the note; (b) that there was a previous course of dealing between the same parties; (c) a previous course of dealing generally under certain circumstances, or (d) that the entire management and control of the company was handed over to one individual.

9. The Pennsylvania rule criticised, and suggestion made that the legislature by appropriate action bring the law of this State into harmony with that of other states.

10. In an action on promissory notes of a corporation maker, plaintiff cannot be charged with notice of the illegality of the notes by proof of an equity proceeding by the receiver of his transferor, in which the legality of the notes was questioned, where it appears plaintiff was not a party to the proceeding, and had no actual notice of the defect in the notes through the proceeding.

11. In such case, the subsequent transfer of the notes by the receiver to plaintiff, alleged to have been without consideration,

cannot be set up as a defense, as a breach of trust to which plaintiff was a party.

*Receivers—Sale of promissory notes—Formal order of sale.*

12. The mere fact that certain promissory notes are not included in a formal order to a receiver to sell the assets of a corporation, will not violate a subsequent sale of the notes, if the receiver had a general power to sell.

*Statutes—Pleading—Presumption—Fact.*

13. It is not necessary to plead a presumption of fact that arises from a given fact under a statute. When the fact is averred the presumption attaches by virtue of the statute.

Argued October 12, 1921.   Appeal, No. 116, Oct. T., 1921, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1920, No. 1376, on verdict for defendant, in case of S. H. Putnam v. Ensign Oil Company.   Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

Assumpsit on promissory notes.   Before CARNAHAN, J.

From the record it appeared that suit was brought to recover on two promissory notes, one of them dated March 11, 1914, to the order of the High Grade Oil Refining Company of New York, for $2,000, payable at the Dominion Trust Company, Pittsburgh, and signed "Ensign Oil Company, incorporated, William H. Roberts, treasurer, E. E. Arrowsmith, secretary."   The other one is dated April 6, 1914, and reads, "One month after date we promise to pay to the order of High Grade Oil Refining Company of New York $3,000 at Dominion Trust Company, Pittsburgh, without defalcation for value received."   Signed "Ensign Oil Company, incorporated, William H. Roberts, treasurer, E. E. Arrowsmith, secretary."

The notes were endorsed to the Dominion Trust Company, which subsequently failed.   A receiver was appointed by the Common Pleas Court of Dauphin County. Mr. Adams, as receiver of that company, having en-

dorsed these notes to S. H. Putnam, the latter now sues to recover on the notes against the maker.

Other facts appear by the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned,* inter alia, were various rulings and instructions appearing by the opinion of the Supreme Court, quoting record.

*William A. Wilson,* of *Calvert, Thompson & Wilson,* for appellant.—As there is no claim in this case that appellant is a party to any fraud or illegality affecting the instrument, he consequently has all the rights of the Dominion Trust Co., which transferred the note to him.

There is no denial that the Dominion Trust Co. discounted the notes before maturity and gave value for them, and the fact, if a fact it is, that the maker was an accommodation maker would be no defense against the payment of the notes: Penn State Deposit & Trust Co. v. Stetson 175 Pa. 161; Camden Nat. Bank v. Fries-Bresline Co., 214 Pa. 395.

*Joseph A. Beck,* with him *Lewis P. Litzinger,* for appellee.—The notes never came into the hands of a holder in due course.

The notes were not executed as required by defendant company's by-laws: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Worthington v. Ry., 195 Pa. 211; First Nat. Bank v. Hotel Co., 226 Pa. 292; Corr v. Evans Colliery Co., 63 Pa. Superior Ct. 56.

OPINION BY MR. JUSTICE KEPHART, January 3, 1922:

Plaintiff's statement avers the notes in suit were endorsed and delivered to the Dominion Trust Company before maturity and he is the holder thereof. The execution of the notes and endorsements by intervening en-

dorsees having been proved, they were received in evidence. Plaintiff then rested his case against the maker of the note. Appellee contends there should have been an averment that the Dominion Trust Company, plaintiff's transferor, took the notes in good faith, for value, or that it was a holder thereof in due course, and plaintiff should prove this on the trial of the case. Section 59 of the Negotiable Instruments Act, "every holder is deemed prima facie to be a holder in due course," would be meaningless if this was the law. It is not necessary to plead a presumption of fact that arises from a given fact under a statute. When the fact is averred the presumption attaches by force of the statute. Here we have the statement both plaintiff and endorsers were holders entitled to the benefit of section 59, and plaintiff, with the right of a holder in due course, would take the instrument free from a defective title of prior parties, and free from the defenses available to prior parties among themselves.

Plaintiff became the holder after maturity through one who was a holder in due course. A negotiable instrument gives substantial rights to one who derives his title through a holder in due course, provided the former has not been guilty of any fraud or illegal act. A note in the hands of a holder other than in due course is subject to the same defenses as if it was nonnegotiable, except where he derives his title through a holder in due course and has not been guilty of any fraud or illegality affecting the instrument. In such cases he has all the rights of a former holder (in due course) in respect to all prior endorsees or makers: section 58.

Though plaintiff, by section 59, is entitled to the benefit of this valuable presumption of fact, which makes it comparatively easy for him to establish a prima facie case, still, if it appears in defense that "the title of any person who has negotiated the instrument was defective," the law raises a presumption in the maker's favor and the burden is then shifted to the holder to show that

he, or someone under whom he claims, was a holder in due course. It is not necessary for defendant to show knowledge of the holder in addition to defective title, but a defense of nonliability will not be established solely by this evidence, for the jury must find the holder had knowledge of the defect, and this it must do from the evidence so far submitted, or plaintiff may show he did not have such knowledge: Catasauqua Nat. Bank v. Miller, 60 Pa. Superior Ct. 220, 222. When a defect in title appears, the burden is on plaintiff to show that someone in the line of title acquired the note as such holder.

When plaintiff's case rested, he was entitled to the presumption that he took in good faith, for value, and had no notice of a defect in title or an infirmity in the instrument, and unless it appeared the title was defective (section 59), he would have a right to recover.

Defendant proposed to show (1st) defendant was an accommodation maker, receiving no consideration, and the note was ultra vires, and (2d) the notes were not executed by the officers authorized by the by-laws. It is unquestioned plaintiff's prior endorsee discounted the notes before maturity and gave value for them. Generally, a corporation may not become an accommodation endorser or maker of a note, that not being within corporate powers, but defendant, as a corporation, would be no different than a natural person as an accommodation maker; neither could defend on that ground as against a holder in due course. As to him, the accommodation maker is liable on the instrument, notwithstanding that at the time of taking the instrument he knew the maker was only an accommodating party: Negotiable Instruments Act, section 37; Penn Safe Dep. & T. Co. v. Stetson, 175 Pa. 160, 161. Absence of consideration is no defense as to a holder in due course: section 28; Cox & Sons Co. v. Brewing Co., 245 Pa. 418. This defense is not good against a holder in due course or one who derives title through a holder in due course. The affirmance of defendant's point was, for these rea-

sons, error; it was as follows: "If defendant received no consideration for the note in suit, the burden was on plaintiff to prove not only that the Dominion Trust Company paid value for the two notes before maturing, but at the time it obtained the said notes it had no notice that defendant received no consideration"; plaintiff, as transferee from the Dominion Trust Company, a holder in due course with the presumption of fact to which it was beneficially entitled, was not required to prove consideration. Section 59 applies only to defective title and section 55 does not cover the matter the point intended to reach.

The further defense that the note was issued by the officers of the company in violation of a by-law which required notes to be signed by the president and secretary, would, under our prior decisions, be a complete defense as against the payee and those under him. This strikes at the integrity of the instrument; it goes farther than challenging title and infirmity,—it challenges the existence of the note as corporation paper. Unless the corporation received the proceeds of the note, or by a course of conduct, as outlined by our previous decisions, is estopped from setting up noncompliance with the by-laws, the defense is good; this, under the evidence, was for the jury, under proper instructions.

Pennsylvania has adhered to the rule that the by-laws of a corporation are written into the charter, defining and limiting the rights, duties and powers of its officers, and places persons dealing with the corporation on notice as to the extent of the officers' power and agency, actual knowledge of the existence of the by-laws being immaterial: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157, 162; Wayne Title & Trust Co. v. Schuylkill, etc., Co., 191 Pa. 90, 96; Worthington v. Schuylkill, etc., Co., 195 Pa. 211, 213; DeForest v. Northwest Townsites Co., 241 Pa. 78, 80. With respect to commercial paper, this rule has been modified in at least four instances, viz: (a) where the corporation receives the benefit from a

note irregularly executed; (b) a previous course of dealing between the same parties; (c) a previous course of dealing generally under certain circumstances; and (d) where the entire management and control of the company is handed over to one individual: see First Nat. Bank v. Colonial Hotel Co., 226 Pa. 292, 296; Chestnut, etc., Co. v. Record Pub. Co., 227 Pa. 235, 240; First Nat. Bank v. Am. Bangor Slate Co., 229 Pa. 27, 32; Hartzell v. Ebbvale Mining Co., 239 Pa. 602, 605.

The Pennsylvania rule does not obtain in other states: 14 C. J. 348, and cases cited in note 48. In most jurisdictions, with but one exception, subject to minor modifications, the by-laws in those states operate merely as regulations among members of the corporation; they have no effect upon contracts or other dealings with third persons, unless they have knowledge of the by-law.

The reason for the Pennsylvania rule is a desire to protect stockholders in every possible way against mismanagement of corporate business; but the proposition is no doubt sound that the business world, constituting by far the greater number of persons interested in the security and integrity of certain commercial acts, may be, and no doubt is, injuriously affected by the continuation of such rule. When our rule was adopted corporations were not so numerous; at present they have taken hold of the vast majority of business enterprises in the country. A large part of our internal and external commerce is transacted through the medium of negotiable notes, frequently termed "couriers without luggage"; and it must appeal to all that these should be made, to the greatest extent possible, freely transferable and transmittable, without any cloud on their integrity. When commercial life, in and out of the Commonwealth, has brought home to it a realization that in this State endorsements of corporation notes can be attacked because contravening a by-law, commercial paper of Pennsylvania corporations will circulate under a most seri-

ous handicap; it may be necessary to attach to each note a certified copy of the by-law authorizing the officers to act, and, where several companies are thus interested, the difficulties multiply. While no doubt the Pennsylvania law has regulated the matter in the right light, purely from the standpoint of principal and agent, where the inquiry concerns the scope of the agent's authority, and how far his acts bind the principal, yet when, in dealing with corporate commercial paper, we invalidate acts, apparently within the power of certain officers, because forbidden by an unknown internal law of the corporation, this court is out of harmony with other jurisdictions.

The question becomes pertinent, Where an individual is held for acts of this agent, done within the apparent scope of authority, why should a group of individuals, as a corporation, stand in any different position? There is the same element of honesty present in both situations, and, no matter what checks may be taken to protect others, one reaches the point when, unavoidably, a servant's honesty must be depended on, it being always within his power to be dishonest; therefore, it may well be urged that, where commercial paper is signed or endorsed in the usual and customary way, it ought to be binding on a corporation, unless the holder has actual knowledge the note was improperly executed. The public, who usually knows nothing of the by-laws, deals on the faith of the official signatures on the paper, for in a great majority of instances corporate commercial paper is signed in the same way; and there is no reason why this so-called "courier without luggage" should not be at least as safe with respect to corporate signatures as to those of ordinary individuals. Commercial paper endorsed by a corporation is in the nature of a check, and the signature of the treasurer should be binding; possibly this court went so far in Hartzell v. Ebbvale Mining Co., supra,—that where the business of the corporation was handed over to one person to transact,

its paper was good, even though not executed according to the by-laws.

It would seem advisable for the law to be, as suggested in other states, that where a note has been signed in the regular way by corporate officers, as, for instance, by the president and secretary, or president and treasurer, or endorsed by the treasurer, such note, in the hands of any holder in due course, or one with those rights, should be good as against the corporation, notwithstanding any by-law to the contrary, unless previous knowledge of the existence of such by-law is brought home to the holder. In this connection, we now have so many forms of indemnification through surety companies, if stockholders need further protection, in addition to the character of their officers, it can be accomplished by the corporation obtaining a surety bond.

The execution of commercial paper is within the apparent scope of the authority of these officers. The same persons may create an indebtedness against the company; they may bind it, through acts done in its behalf, giving rise to negligence; and in many other situations they have implied power to do those things that bind the corporation. It is apparent the necessities of business require the public,—dealing with such officers, on the strength of this apparent power,—to be protected against secret by-laws, which may be changed monthly. This is the law generally prevailing in other jurisdictions; while, owing to the prior decisions of this court and the facts as they may be developed, we cannot follow them in the present case, yet the circumstances give rise to this discussion, and some of us indulge the hope that the legislature, now that attention is called to the matter, will bring our law into harmony with other states.

It was further averred, by way of defense, plaintiff knew the notes were illegal. To show.this an equity proceeding in Allegheny County was offered; it there appeared the foregoing defense was made to these notes in an action brought by the receiver of the Dominion

Company.  Plaintiff was not a party to this, and, if it was material, he could not be affected unless he knew of it.  There is no pretense plaintiff had actual knowledge of any defect through these proceedings.  As a defense, if illegality of issue affected all holders, it was not necessary to show notice to any person.  Even if this were a defect in title or an infirmity in the instrument, to charge with notice one who negotiates the note, it must appear he had actual knowledge of the infirmity or defect, or knowledge of such facts that, when he took the instrument, it would amount to bad faith: section 56.  Notice was not necessary.  The first assignment is sustained.

To show defective title, the transfer of the paper from the receiver was attacked as a breach of trust, being without consideration; and, it is urged, plaintiff, a party to it, should not be permitted to recover under such circumstances.  The title is here assailed.  A defective title is one where a holder obtains the instrument by fraud, duress, force or fear, other unlawful means, or illegal consideration, in breach of faith or under such circumstance as amounts to a fraud.  The proceedings in Dauphin County, authorizing the receiver to sell the assets to the Dominion Trust Company, were offered in evidence.  It did not appear these notes were included in the list of securities.  It was not necessary for him to receive an order of court to sell, and the mere fact that they were not named in the formal order would not vitiate the sale subsequently made of them.  The receiver, when on the stand, was not asked whether he had been paid anything for the notes; but the consideration for the transfer from the receiver to the plaintiff was not in issue (Camden Nat. Bank v. Fries-Breslin Co., 214 Pa 395; 8 Corpus Juris 1057); the title was no way in issue unless it appeared an inquiry into it would in some way protect defendant or let in some meritorious defense.  Adams, receiver for the Dominion Company, was present in court and knew of this litigation; defendant could not be called on again to respond for the amount

of the note. The Dauphin County court had jurisdiction over Adams and any breach of trust to creditors. The sum paid for the transfer could not be inquired into in this action. If it was prejudicial to creditors, the court, having control of the receiver, will correct it. The second and fourth assignments are sustained.

Judgment reversed and a venire facias de novo awarded.