## Title Guaranty Company v. Barone, Appellant.

Argued October 7, 1935.   Before FRAZER, C. J., KEP-
HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Warren H. Van Kirk,* with him *A. Arthur Boscia* and *H. L. Abrams,* for appellant.

*J. Smith Christy,* of *Weil, Christy & Weil,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 25, 1935:

Dr. Barone, with nine others, agreed to purchase stock in a newly-formed corporation known as the Plaza Company. Each of the prospective purchasers executed a note in the sum of four thousand dollars in favor of the Plaza Company to cover the cost. To insure against default on any of the individual notes, a blanket note was given to the Plaza Company, as payee, with Dr. Barone, appellant, as one of the endorsers. Subsequently, the proposed purchase fell through. Dr. Barone's individual note was then returned and it was stated to him that the blanket note here in suit was destroyed.

The Title Guarantee Company, appellee, became the holder of this note under the following circumstances. Prior to the maturity of the note, the Plaza Company, to facilitate mortgaging its real estate, sought title insurance from the Guarantee Company. There were unpaid taxes due, and the Plaza Company deposited with the Guarantee Company stocks, bonds, and this note as collateral to guarantee the payment of these taxes. The Title Guarantee Company was subsequently compelled to pay the taxes. At the maturity of the note, and after appropriate demand, it brought this action, which resulted in a judgment in its favor from which Dr. Barone appealed. The errors complained of are mainly trial errors.

At the trial appellee made out a prima facie case by the offer of the note held by it, proof of Dr. Barone's

signature, nonpayment, protest and notice. Appellant proved an infirmity in the note by showing its fraudulent use in the transfer to appellee, and then immediately endeavored to show the holder had knowledge of that infirmity by calling as a witness Mr. Simons, president of the Plaza Company. He, having made the deposit of the note, testified that when it was deposited he explained to Kunkle, trust officer of the Guarantee Company, all the circumstances surrounding this note; and stated to him that "some of the men on the note were in the deal and out of the deal." This was denied by Kunkle who stated there was nothing said concerning the integrity of the note.

Under section 59 of the Negotiable Instrument Act (Act of 1901, P. L. 194), "every holder is deemed prima facie to be a holder in due course." This presumption was sufficient to make out a prima facie case for the plaintiff by its production of the note and proof that it was a holder thereof. When it was shown, however, that the title of the payee was defective, the evidentiary value of the presumption disappeared, and the burden of proof shifted back to the holder to prove that he was a holder in due course. The defendant had the burden of convincing the jury that a defect existed; the plaintiff, the ultimate burden of convincing the jury that it was a holder in due course. These principles are clearly set forth in section 59 of the Negotiable Instrument Act and the cases. See Real Estate Inv. Co. v. Russell, 148 Pa. 496; Second Nat. Bank of Pittsburgh v. Hoffman, 229 Pa. 429; Camden Nat. Bank v. Fries Breslin Co., 214 Pa. 395; Crittenden v. Hoffman, 279 Pa. 127.

While the burden thus rested on the plaintiff to show that it had no notice and knew nothing of the infirmity, defendant undertook that burden for plaintiff when, in its own case, it called as on cross-examination Kunkle, secretary and treasurer of the Guarantee Company. He denied positively Simons's conversation or that he knew of any infirmity in the note. However, the fact that the

endorser mistakenly assumed the burden of producing evidence relating to notice, did not affect the ultimate burden cast on the holder to show that it was a holder in due course, that is, that it took the note for value and without notice or knowledge of an infirmity.

Appellant complains that the court failed to correctly instruct the jury that the burden of proof was on plaintiff to show want of knowledge or lack of notice of the fraud or infirmity. As Professor Wigmore defines burden of proof it is used in two senses. One, the "risk of nonpersuasion of the jury" always assumed by him asserting the affirmative of a fact. The other, the duty of producing evidence to satisfy the judge or, in other words, going forward with the proof. The former never changes; the latter frequently shifts during the progress of the trial. See Wigmore on Evidence (2d ed.), paragraph 2487. Plaintiff having established a prima facie case and defendant having shown an infirmity in the note by oral testimony, under our decisions in Second Nat. Bank of Pittsburgh v. Hoffman, supra, and Nanty-Glo v. American Surety Co., 309 Pa. 236, the case, at that stage, was for the jury on the question of the credibility of the witnesses. Defendant was not required to prove that the bank had knowledge of the infirmity for the bank must show affirmatively that it neither knew nor had notice of the fraud, and that it took the note in good faith and for value. This the bank did through the testimony of Kunkle. While the trial judge did not give the jury quite as accurate a statement of the law on the burden of proof as he might have, in that he did not state in terms that the burden of showing lack of knowledge or notice of the infirmity was on the plaintiff, the tenor of his entire charge carried that implication. We cannot accept appellant's version of the charge that the court led the jury to infer that the burden of proving notice was on defendant rather than plaintiff. Defendant did show affirmatively that notice had actually been given. This was denied by the plaintiff, and the court instructed

the jury that unless the plaintiff "has satisfied you that it actually never had any notice of the infirmity," then the verdict should be for the defendant. While this specific statement might have been enlarged, it did convey to the jury the thought that the risk of persuasion was upon plaintiff. Counsel did not ask for any further instruction, and cannot now complain of inadequate instructions when he was requested at the end of the charge to suggest any omissions or shortcomings and failed to do so. See Bromall v. P. R. R. Co., 296 Pa. 132, 140; Schlossstein v. Bernstein, 293 Pa. 245; Chandler v. Lafferty, 282 Pa. 550; Liacopoulos v. Coumoulis, 298 Pa. 329.

Appellant further complains that the use of the word "satisfied" in several places in the charge inaccurately expressed the measure of proof. Plaintiff's burden required it to show that it was a holder in due course "by a preponderance of the evidence." See Brannon, Negotiable Instruments (4th ed.) 531. When discussing the effect, weight or value of testimony, does the word "satisfy" indicate the same quantity and quality of evidence for convincing the mind as the term "preponderance of the evidence?" There seems to be sharp conflict of authority on this point. Generally speaking it has been held that the word "satisfied" imposes too heavy a burden of "convincing" on the party who has the affirmative of the issue, but there are a number of authorities which hold that such an instruction is not error. We have a case bearing on this point in Com. v. Barrish, 297 Pa. 160. There we held that the word "satisfied" as used in connection with proof of an alibi, carried with it the same measure of proof as "preponderance of evidence." But defendant had an opportunity to ask for a better worded instruction if he felt it was wrong, and since he did not see fit to do so he cannot be now heard to complain.

The court below instructed the jury that the trust company "must have had actual knowledge of the in-

firmity or defect or knowledge of such facts that its action in taking the instrument amounted to bad faith." The complaint is that the court did not define bad faith. It is the duty of the court to instruct the jury as to the meaning of legal or technical terms occurring in the course of the trial and used in the charge. See P. R. R. v. Jones, 300 F. 525; Loethscher v. Campo, 107 Conn. 568. But the absence of such instruction is not error where under the circumstances it was not or could not be misunderstood (Berry v. Wilson, 64 Missouri 164; Gans v. Samuels, 14 Ohio 592), especially where the parties have had an opportunity to secure the instructions they desire and fail to embrace it, as they did in this case.

Appellant further complains that the court below did not charge the jury upon bad faith as a matter of law. But the court did make it plain to the jury that if the appellee had knowledge of the infirmity of the note or had such knowledge as amounted to bad faith, the verdict should be for the defendant. Any attempted definition of bad faith would lead into much difficulty. Bad faith is deduced from the facts in each case and if this appellee actually knew of the fraud connected with this note it would be bad faith if it took the note under those circumstances; but this was denied by the appellee. We are not convinced that Simon's language cast upon appellee any duty with respect to defendant or any implication of knowledge therefrom. The court properly submitted all those questions to the jury and instructed them that if they believed Simon's testimony or that the appellee acted in bad faith, it should find for the defendant.

Relative to the further contentions that the court failed to charge the jury to give credit to Dr. Barone for certain securities held as collateral, which were still in the possession of the holder at the time of trial, we think the court below properly disposed of this and another assignment which complained of the endorsee returning

securities that were held as collateral. These questions depended to a large degree on whether Dr. Barone had any interest in the stock and bonds which were, with his note, deposited as collateral. If Dr. Barone was surety for the Plaza Company, he might have reason to complain of plaintiff's action in returning some of the stock deposited with that company as collateral since, as surety, on payment, he would be subrogated to the stocks: Com. v. Froelich, 56 Pa. Superior Ct. 604. Dr. Barone is not, however, in the position of a surety; so far as the Title Company is concerned, it was Barone's obligation, owned by the Plaza Company, that was pledged as security, not his promise to make good if Plaza defaulted. He has no interest in the securities nor will he have any if he is forced to pay this note. Similarly, the court below did not commit error when it failed to consider the value of the securities still in the hands of the Title Guarantee Company in its assessment of the damages. The cases cited by appellant to support such contention are not in point, as they apply to situations where the endorser is a surety for the maker. As will be seen by the statement of facts, if Dr. Barone was a surety at all, he was a surety for one of the ten parties who might have defaulted on their obligation, if the stock purchased had gone through as contemplated.

Dr. Barone did have a right of action against Simons for fraudulently using his note and the court committed no error in so instructing the jury. Moreover, the instruction bore on the credibility of Simons as a witness.

The case was carefully tried and the jury has resolved the facts. The assignments of error are overruled and the judgment of the court below is affirmed.