Arco Metalscraft Company *v.* Shaw, Appellant.

Argued November 18, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Morris C. Solomon,* with him *Melling and Howland,* for appellant.

*Albert S. Herskowitz,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 16, 1950:

This is an appeal from a judgment in favor of the plaintiff in the sum of $5,000, in an action in assumpsit to recover the contract price of 435 market strollers* at $12.75 each, totalling $5,546.25 and $727.20 for certain other manufactured goods admittedly due to plaintiff.

---

\* These market strollers were to be used in self-service markets to carry groceries. Small children could also be carried on these strollers.

On July 16, 1947, the defendant placed a written order with the plaintiff for 500 market strollers to be manufactured in accordance with an accepted sample. On October 27, 1947, fifty strollers were delivered to the defendant and it was agreed that forty-one of these were defective. They were repaired by the plaintiff and paid for by the defendant and are not involved in this action. Three more shipments of fifty strollers each were delivered during December, 1947. The defendant after inspection notified the plaintiff of certain defects in them and the latter promised to make the necessary repairs but failed to do so. The plaintiff then notified the defendant that the balance of the order was ready for delivery. Defendant rejected delivery and orally rescinded the contract. This suit then followed.

Plaintiff claimed that the total of said production orders, shipped and accepted at the instance of the defendant, was in the sum of $4,310.08, less a credit for allowance on the repair of forty-one strollers, agreed upon, in the sum of $26.95. In addition, certain other units totalling $2,820.75, were fabricated for the defendant on which he refused delivery.

The defendant filed an answer and counterclaim admitting that these strollers were manufactured for him by the plaintiff and that the first fifty strollers were accepted and paid for after their repair. He denies that he accepted the other 150 strollers in his possession and claims that they were defective in workmanship in that the frames were not straight, holes were not punched in the metal so that the units could be assembled, the seats and other parts were of poor quality and the strollers were not suitable for resale by him because they did not conform to the accepted sample.

Defendant admitted in his answer that he had owed plaintiff $1,428.63 for other items manufactured for him but claimed that after commencement of this suit, he had paid that amount less $727.20. He filed a counter-

claim for $727.20 for advertising expenses, the cost of cartons and scored sheets which were a loss because of his inability to market the defective strollers. Defendant formally rescinded the contract after suit was started.

This action involves a contract of sale of future goods by sample. The agreement was that the strollers were to be made to conform to the sample made up by the plaintiff and approved by the defendant; the parts of the strollers had to be interchangeable. The strollers were to be disassembled and the units were to be shipped to the markets where they could be quickly reassembled. They were to be painted a uniform color and (for the protection of children) with a certain brand of paint measuring up to the requirements of the Pure Food Laws.

This contract is governed by Section 19, Rule 4, paragraph one of The Sales Act of 1915, P. L. 543, 69 P. S. 143 which says: "Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. . . ." Since it is admitted by both parties that this is a sale of future goods by sample and the plaintiff alleges performance, he has the duty of proving by a preponderance of the evidence that the goods were unconditionally appropriated to the contract by him with the assent of the defendant.

The question which the jury had to answer was whether or not the plaintiff had performed his part of the contract. If he did, he is entitled to a recovery, but if he did not, the defendant had a right to treat the nonperformance of the condition as a breach of warranty. Section 11 of The Sales Act, paragraph one states: "Where the obligation of either party to a contract to

sell or a sale is subject to any condition which is not performed, such party may refuse to proceed with the contract or sale or he. may waive performance of the condition. If the other party has promised that the condition should happen or be performed, such first-mentioned party may also treat the non-performance of the condition as a breach of warranty." The "condition" in this contract is that the strollers conform to the sample. Section 16(a) of The Sales Act states: "There is an implied warranty that the bulk shall correspond with the sample in quality."

The record presented a clear-cut issue of fact. The appellant complains because the trial judge did not instruct the jury as to the burden of proof. The trial judge said nothing about the burden of proof resting upon the plaintiff. This omission was palpable error. Just as in criminal cases the Court must instruct the jury that the defendant cannot be convicted unless he is proved guilty beyond a reasonable doubt so in civil cases it is the duty of the Court to instruct the jury that the plaintiff cannot recover unless he has sustained the burden of proof the law has cast upon him. The trial judge usually adds: "by the fair preponderance of the evidence", but when the plaintiff *sustains* the burden of proof it must at least be "by the fair preponderance of the evidence". Therefore, a *defendant* cannot justly complain of the omission of that phrase because *some* degree of proof is implied in the phrase "burden of proof", and proof by the "fair preponderance of the evidence" is the lowest degree of proof known to the law. In this connection see the opinion we have this day filed in the case of *Se-Ling Hosiery, Inc. v. Margulies*, 364 Pa. 45, 70 A. 2d 854.

A trial judge should also explain as to the possible shifting of the burden of proof during the trial. This Court said in *Henes v. McGovern*, 317 Pa. 302, 310, 176 A. 503, quoting Lord Justice Bowen: " 'If he [plain-

tiff] makes a prima facie case, and nothing is done by the other side to answer it' " the plaintiff wins. " '. . . there are points at which the onus of proof shifts, . . . it is not a burden which rests forever on the person on whom it is first cast, but as soon as he, in his turn, finds evidence which, prima facie, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand. Now, that being so, the question as to onus of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win.' "

While the trial judge said nothing about the burden of proof resting upon the *plaintiff*, he did say: "It is the burden of the defendant to show that the strollers which were received by him from the plaintiff were defective and that such defects were not of the kind and nature that could have been readily adjusted by the plaintiff, had demand been made of him to remedy them."

The record thus presents this anomaly: the jury was instructed as to the burden resting upon the *defendant* but was instructed *not at all* as to the burden resting upon the claimant-plaintiff. It is on the claimant-plaintiff that the burden of proof initially rests and unless he meets that burden, there is no duty on the part of the defendant to come forward with evidence, except, of course, in support of any counterclaim he has pleaded.

The reasoning processes by which a question of fact is resolved are the reasoning processes of the jurors but a trial judge can and should instruct the jury how to proceed to reason on the issue or issues presented to them, how to appraise the credibility of the witnesses, how to weigh the evidence, and the trial judge should especially impress upon the jury that the burden of proof is on the plaintiff to prove his case (as we have heretofore stated). In *Sears v. Birbeck*, 321 Pa. 375,

184 A. 6, we said: "It is a primary duty of the trial judge —a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. Such clarification is impossible without clear instruction as to the burden of proof, the shifting of the burden in certain states of the record, and if plaintiff has offered prima facie proof of what he has pleaded, the duty then devolving on the defendant to come forward with evidence."

Appellant also complains that the verdict was for a sum of money which was not consistent with the evidence and claims of either litigant. As to this claim the court below said: "There was some ambiguity and uncertainty as to the exact amount plaintiff would be entitled to recover if there were a verdict for him, but when all the figures are considered it would seem that the Jury must have considered them carefully and arrived at a flat figure or verdict. Counsel for plaintiff has suggested a basis for this amount as follows: . . . Of course, the Jury may have arrived at their figure or verdict in some other calculation of the figures before them." Since this case is to be tried again, we do not now decide whether, if there had been a correct charge as to the burden of proof, the verdict would be justified by the evidence.

The judgment is reversed and a new trial is granted.