Penneys *v.* Segal, Appellant.

Argued January 8, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward Greer*, with him *Robert K. Greenfield*, and *Folz, Bard, Kamsler, Goodis & Greenfield*, for appellant.

*Israel Packel*, with him *Josef Jaffe*, and *Fox, Rothschild, O'Brien & Frankel*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 19, 1963:

This is an appeal from an order of the Court of Common Pleas No. 4 of Philadelphia County which

310

granted a new trial in an assumpsit action upon the ground that the trial court *inadequately* instructed the jury on the subject of the burden of proof.

Samuel Segal, Jr. (Segal), in November, 1953, received a telephone call from a Mrs. Daoud who is engaged in the jewelry and furniture business, under the name of Daoud Brothers, in Atlantic City and elsewhere. Mrs. Daoud suggested, since the business was in need of ready cash, that Segal might be interested in purchasing some jewelry and to that end, thereafter, Segal met her in New York City.[1] At that meeting Segal selected certain jewelry of the value of $65,-000 and gave Mrs. Daoud a series of promissory notes payable to Daoud Brothers. Of these notes, only six notes are in the possession of Charles H. Penneys (Penneys) and these six notes form the subject matter of this litigation.

These six notes, all dated November 9, 1953, are payable to the order of Daoud Brothers and signed by Segal. One note for $2500 was due April 15, 1954; the other five notes, each for $5000, were due, respectively, April 19, April 26, May 3, May 10 and May 17, 1954. Prior to their maturity dates, these six notes came into the possession of Penneys endorsed in blank by a Daoud Brothers' representative whose authority to so endorse is not questioned.

Upon maturity of these notes, totalling $27,500, payment was refused by Segal. Thereafter, Penneys instituted an assumpsit action in Court of Common Pleas No. 4 of Philadelphia County against Segal for the amount of the notes plus interest. The matter came on for trial before the Honorable BYRON MILNER and a jury and the jury returned a verdict in favor of Segal and against Penneys. Penneys filed motions for

---

[1] For a number of years Segal had known Mrs. Daoud, both socially and in business matters, and over a period of some years had a large number of business transactions with Daoud Brothers.

judgment n.o.v. and a new trial; the former was denied but the latter granted. From the order granting a new trial Segal now appeals.

Penneys' motion for a new trial in the court below assigned the usual reasons, i.e., verdict against the evidence, the weight of the evidence and the law, and, in addition, six alleged errors in the charge of the trial court. In granting the new trial the court stated: "In a case . . ., involving commercial paper, where the plaintiff's making out a prima facie case casts on the defendant the burden of coming forward with evidence to refute the plaintiff's status as a holder in due course, it is essential that the jury be carefully and thoroughly instructed respecting the burden of proof and the shifting of that burden as the stages of the trial unfold. Failure of the trial judge so to instruct the jury is palpable error. [citing cases]. At the outset the trial judge charged the jury that the burden of proof was on the plaintiff to establish his case by a preponderance of the evidence, which he did incorrectly. The plaintiff had only to offer the notes and rest on the admissions, which he did, and the defendant had the burden of establishing, by a preponderance of the evidence, circumstances which, if believed, would destroy the plaintiff's status as a holder in due course, subject to such rebuttal as the plaintiff saw fit to introduce. Nowhere in the charge is there any instruction which would have so informed the jury; and, though no exception was voiced by counsel in this respect, we regard the matter as so fundamental, especially in cases of this type, as to require a new trial."

Our scope of review is clear. When it clearly appears from the opinion of the court below on the new trial motion, "that except for the reason relied upon by the court for granting a new trial, judgment would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of

discretion, but for the legal merit of the sole and exclusive reason assigned for the granting of a new trial: . . . .": *Keefer v. Byers,* 398 Pa. 447, 449, 159 A. 2d 477; *Childs v. Austin Supply Co.,* 408 Pa. 403, 184 A. 2d 250.[2] An examination of the opinion in the case at bar discloses that the *sole* reason assigned for the grant of a new trial is the *inadequacy* of the instructions to the jury on the subject of burden of proof and, therefore, our review is limited to a consideration of the legal merit of this reason under the instant factual situation.

In view of the fact that these notes were executed prior to the effective date of the Uniform Commercial Code[3]—July 1, 1954—the provisions of the Negotiable Instruments Act[4] govern the case at bar.

At the trial, Penneys rested after offering in evidence the six notes; their execution and endorsement having been admitted, a prima facie case was made out and Penneys deemed to be a holder in due course: Negotiable Instruments Act, §59, supra; *Grange Trust Co. v. Brown,* 49 Pa. Superior Ct. 274, 280; *Putnam v. Ensign Oil Co.,* 272 Pa. 301, 304, 305, 116 A. 285; *Dull v. Mitchell,* 283 Pa. 88, 89, 90, 128 A. 734; *Title Guaranty Co. v. Barone,* 319 Pa. 499, 502, 181 A. 765; *Poelcher v. Zink,* 375 Pa. 539, 544, 101 A. 2d 628.

The defense offered by Segal was that, when he signed the $65,000 promissory notes, which included the notes in issue, it was understood between Mrs. Daoud and himself that she would have these notes discounted and thereby obtain cash for Daoud Brothers and, if, and only if, such notes were so discounted, Segal would take the jewelry selected. Mrs. Daoud did discount $37,500 of these notes at a Trenton, N. J. bank, Segal

---

[2] *Morse Boulger Destructor Co. v. Arnoni,* 376 Pa. 57, 62, 101 A. 2d 705, relied upon by Penneys, is inapposite.

[3] Act of April 6, 1953, P. L. 3, 12A PS §1-101 et seq.

[4] Act of May 16, 1901, P. L. 194, 56 PS §1 et seq.

received jewelry of the value of $37,500 and paid off these notes at the bank as they matured. In the meantime, in the latter part of November, 1953, Mrs. Daoud gave the balance of the notes, amounting to $27,500, to Penneys, with whom over the years Mrs. Daoud had had many business transactions, *for the purpose of discount*. The notes were not discounted by Penneys and, although requested by Mrs. Daoud to return the notes, Penneys refused to do so. There is no doubt that Segal received no consideration whatsoever from Penneys or Daoud Brothers for the $27,500 notes. In brief, it is Segal's position that the notes were given to Daoud Brothers for the purpose of having them discounted and, upon Mrs. Daoud's failure to have the notes discounted, Segal had a right to the return of the notes and the notes could not be negotiated to a third person as a holder in due course.

In rebuttal, Penneys took the position that the notes were given to him by Daoud Brothers, through Mrs. Daoud, not for the purpose of discount but in payment of an antecedent debt totalling $28,000 owed him by Daoud Brothers and represented by certain checks which were in Penneys' possession. Upon receiving the notes, Penneys received an additional $500 in cash from Daoud Brothers and then returned to Daoud Brothers their overdue checks.[5]

At the conclusion of the testimony, the court, very properly, held that the resolution of the factual dispute between the parties was clearly for the jury and such was tantamount to a ruling that, if believed, Se-

---

[5] The record shows a close and intimate business relationship between Penneys, Daoud Brothers and Mrs. Daoud. There is evidence Penneys dictated to Daoud Brothers the manner of keeping their book records of dealings with him, of Daoud Brothers giving Penneys blank checks time and again, and of most frequent passing back and forth of checks. Dealings between the parties amounted over the years to approximately $1,000,000.

gal's defense constituted an infirmity in the title to these notes within the meaning of Section 55 of the Negotiable Instruments Act, supra. See: *First National Bank of New Jersey v. Cattie Bros.*, 285 Pa. 202, 206, 131 A. 731; *Horrell v. Reeves and Nelson,* 72 Pa. Superior Ct. 129. In *First National Bank of New Jersey v. Cattie Bros.,* the maker of a promissory note presented a defense similar to that in the case at bar, the maker having given the note to the payee for the purpose of having it discounted to raise money for a certain purpose and the payee did not so use it. The Court said (p. 206) : "Hence, as the payee did not use it for that purpose, appellant [the holder-bank] admits it had 'the burden of proof to show that it was a holder . . . in due course' and so the statute provides, . . . ."

On the state of the instant record the initial burden on Penneys was met by production of the notes and admission of their execution and, prima facie, Penneys was established as a holder in due course. Upon completion of Segal's case, there was sufficient evidence to submit to the jury on the question of an infirmity or defect in the title to these notes and Segal had sustained his burden. It then became the duty of Penneys, in accordance with the provisions of Section 59 of the Negotiable Instruments Act "to prove that he or some person under whom he claims acquired the title as holder in due course . . . ." Thus there was the initial burden of proof on Penneys, the shifting of that burden to prove defect or infirmity of title to Segal and the eventual burden on Penneys to prove that he was a holder in due course.

Perhaps a person trained in the law could, by reading between the lines of this charge, have gleaned where the ultimate burden of proof rested but certainly not laymen. In the instant factual situation it was most important that the jury understand where the initial burden of proof rested, if and when the burden

shifted and, if the burden shifted, where the ultimate burden rested. An examination of the instant charge reveals its inadequacy in this respect. Even though counsel for Penneys sat idly by and requested no further instructions on the subject, the inadequacy of the charge under the circumstances constituted an error so fundamental and basic in nature as to require the grant of a new trial. The duty of a trial judge to adequately instruct a jury on burden of proof is defined in *Arco Metalscraft Co. v. Shaw*, 364 Pa. 39, 70 A. 2d 850.

Order affirmed.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. There was no basic fundamental error. Furthermore, not only did plaintiff fail to take an exception, but if the charge was inadequate, this was overcome and cured by plaintiff's points for charge, which were affirmed.

Mr. Justice ROBERTS joins in this dissenting opinion.