523 A.2d 723

**WESTINGHOUSE ELEVATOR COMPANY, Appellant,**

v.

**Alice HERRON, Trustees of C.I. Mortgage Group United Elevator Company, Binswanger-Herman Company, Competitive Building Maintenance Corporation, Imperial Elevator Company and American Building Maintenance, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1986.

Decided March 30, 1987.

Reargument Denied June 2, 1987.

Bernard J. Smolens, Philadelphia, for appellant.

James E. Beasley, Philadelphia, for Alice Herron.

Charles W. Craven, Philadelphia, for C.I. Mortg. Group & Binswanger-Herman Co.

G. Wayne Renneisen, Philadelphia, for Imperial Elevator Co.

Paul J. Senesky, Philadelphia, for United Elevator Co.

Jonathan D. Herbst, Philadelphia, for Competitive Bldg. Maint. Corp.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On August 8, 1978, Alice Herron, plaintiff in the action which underlies this appeal, was injured when an elevator in which she was riding dropped two feet as it approached the seventh floor of the UGI Building in Philadelphia, throwing Ms. Herron into the seventh floor lobby. Ms. Herron brought an action against Trustees of C.I. Mortgage Group, the building owners, Westinghouse Elevator Company, the manufacturer of the elevator, and United Elevator Company, the elevator maintenance contractor. C.I. Mortgage Group joined additional defendants Binswanger-Herman Company, the building manager, and Competitive Building Maintenance Corporation, the building maintenance contractor. United Elevator Company joined Imperial Elevator, the former elevator maintenance contractor.

Each defendant denied liability and asserted that other defendants were responsible for Ms. Herron's injuries. Thus, as the trial court observed, "The relationships between the various parties are complex."

Trial began on April 4, 1983 and continued for a week. After the first week of trial, counsel for Westinghouse, Thomas E. Byrne, III, became ill and was unable to continue with the trial. Mr. Byrne's partner, Mr. Schell, informed the court that Mr. Byrne would probably be ready to resume on Wednesday, and the court granted a continuance until then, but by Wednesday Mr. Byrne was hospitalized. The court again ordered a continuance, this time until Friday, and instructed Mr. Schell to arrange for substitute counsel so that the trial could proceed on Friday. On Friday, Mr. Schell indicated that Mr. Byrne might be available by the next Wednesday; however the trial court ordered Mr. Schell to proceed as substitute counsel. Mr. Schell indicated that he was unable to represent Westinghouse adequately and moved for the withdrawal of a juror. The other defendants also moved for a mistrial on the grounds that the delay had prejudiced them. These motions were denied and trial resumed. At this point there had been five days of trial and eight witnesses had testified. What remained of the trial was cross-examination of a defense witness, the introduction into evidence, by Mr. Schell, of Ms. Herron's deposition and portions of her complaint, and closing arguments by all attorneys. Mr. Schell proceeded as substitute counsel on Friday, and on Monday the jury was charged. That afternoon they returned a verdict in favor of Ms. Herron in the amount of $1,488,480 plus delay damages of $424,522.64. Two defendants, C.I. Mortgage and Binswanger, were absolved, and of the remaining defendants, the jury allocated negligence 50% to Westinghouse, 20% each to United Elevator and Imperial Elevator, and 10% to Competitive Maintenance.

Westinghouse, United Elevator, Imperial Elevator and Competitive Maintenance moved for a new trial, in part, on the basis of Mr. Byrne's absence. The trial court granted

the motion for a new trial on the grounds that Westinghouse had been denied an opportunity to effectively present its case to the jury. Superior Court reversed the grant of a new trial and remanded for the trial court to consider remaining unaddressed issues raised in the motion for a new trial, 344 Pa.Super. 631, 495 A.2d 618. We granted allocatur to address the questions of whether the trial court abused its discretion in granting a new trial and whether if a new trial was properly granted, it should be granted as to all parties, including the defendants who were absolved at the first trial.

■ The standard for review of a trial court's grant of a motion for a new trial generally is whether the trial court palpably and clearly abused its discretion or committed an error of law which controlled the outcome of the case. *Thompson v. City of Philadelphia*, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985), citing *Nehrebecki v. Mull*, 412 Pa. 438, 194 A.2d 890 (1963). See also *Nicholson v. Garris*, 418 Pa. 146, 150–151, 210 A.2d 164 (1965). When the trial court gives a single reason for the grant of a new trial, however, its discretion is not at issue, but instead, the validity of its legal justification for a new trial, and in that case, an appellate court must review for the legal adequacy of the reason given for the new trial:

> When it clearly appears from the opinion of the court below on the new trial motion, "that except for the reason relied upon by the court for granting a new trial, judgment would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of discretion, but for the legal merit of the sole and exclusive reason assigned for the granting of a new trial: . . . .": *Keefer v. Byers*, 398 Pa. 447, 449, 159 A.2d 477 . . . .

*Penneys v. Segal*, 410 Pa. 308, 311, 189 A.2d 185 (1963).[1]

In the instant case, the trial court observed that the granting of a new trial was within its sound discretion and

1. In *Penneys* the trial court granted plaintiff's motion for a new trial on the sole grounds that instructions to the jury were inadequate.

that "when the judicial process has resulted in the working of an injustice upon any of the parties, the trial judge is obliged to grant a new trial. *Kiser v. Schlosser*, 389 Pa. 131, 133, 132 A.2d 344, 345 (1957)." [2] The trial court then stated:

> In the instant case, there can be no question that Westinghouse has been severely prejudiced by the absence of its counsel of choice, Mr. Byrne.
>
> The suit was originally filed in June of 1980. Because of the large number of parties, and the complex alignment of their interests, there has been a very considerable amount of discovery in the intervening period. Only Mr. Byrne was familiar with these materials. Similarly, by the end of the fifth day of trial, the opening statements had been given, ten witnesses had been fully examined, and extensive cross-examination had been conducted. Mr. Byrne had been Westinghouse's only representative at these proceedings. It might have been physically possible for Mr. Schell to examine all of this information within the 1½ day period available, since this Court instructed the court reporter to make herself available. Yet it would have not been possible for him to prepare the kind of careful analysis of the testimony and issues his client had a right to expect. To require one party to be represented by counsel who had no hand in shaping the strategy or course of the trial, and who, in effect, had no exposure to the trial, is to place upon that party a serious handicap. The party's competitive disadvantage is compounded where there are numerous other defendants with contrary interests. Where, as here,

This Court's review was limited to "a consideration of the legal merit of this reason under the instant factual situation." 410 Pa. at 312, 189 A.2d at 187. See also *Adams v. Scheib*, 408 Pa. 452, 184 A.2d 700 (1962), where the sole and exclusive reason for the grant of a new trial was that the verdicts were against the charge of the court. Again, the standard of review was "the merit of the sole reason assigned for the grant of a new trial...." *Id.*, 408 Pa. at 457, 184 A.2d at 703.

2. This Court has observed: "A new trial should be ordered whenever the exercise of careful discretion sounds the presence of an injustice...." *Thompson v. City of Philadelphia*, 507 Pa. 592, 298, 493 A.2d 669 (1985).

counsel's absence is not the fault of the party, or his attorney, such disadvantage cannot be justified.

Superior Court reversed the grant of a new trial because the trial court had already granted three continuances in the instant case, because substitute counsel was the senior partner of hospitalized counsel and therefore presumably an able attorney, because substitute counsel was afforded access to his hospitalized partner and to the record, because it would be speculative to conclude that original counsel would have been more effective in closing, and, implicitly, because as members of the same firm, substitute counsel and original counsel "knew" the same things about the instant case.

As this Court has observed before, "this type of appeal provides maximum difficulty for an appellate court." *Budget Laundry Co. v. Munter*, 450 Pa. 13, 17, 298 A.2d 55 (1972).[3] The difficulty is that whereas the trial court is able to formulate a decision on the motion for a new trial based on what it has seen in the proceedings below, an appellate court must rely instead on the record. Mr. Justice McDermott put it well in *Thompson v. City of Philadelphia:*

An appellate court by its nature stands on a different plane than a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene

---

3. In *Budget Laundry* the trial court denied a continuance even though, after the case was called on the daily trial list and was in a position for the selection of a jury, appellant's counsel informed the court that he would be unavailable to proceed at that time because he was then in trial before another judge of the same court and was next scheduled for trial in the United States District Court. The case proceeded ex parte and a verdict was returned in favor of the appellee. Superior Court affirmed and this Court reversed on the grounds that the trial court abused its discretion in denying the continuance. 450 Pa. 13, 18, 298 A.2d 55, 56.

The fact that *Budget Laundry* involved the denial of a continuance requested before trial began, not during the trial, as in the present case, is a significant difference in the cases since prejudice to the plaintiff was less likely to be a factor on the *Budget Laundry* facts. Nonetheless, both cases involve the trial court's discretionary denial of continuances and both cases present analytical difficulties for appellate courts, who must review the trial court's actions from a cold record.

evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict.

507 Pa. 592, 599, 493 A.2d 669 (1985). Although *Thompson* involved the issue of whether a new trial should have been granted because the trial court found that the verdict was against the weight of the evidence, the principle that an appellate court is limited to consideration of whether the trial court palpably abused its discretion in awarding or denying a new trial applies to the present case as well as to *Thompson*. Here, as in *Thompson*, our inquiry will be not whether we can find support in the record for overturning the trial court's decision, but whether the trial court's decision finds any support in the record. If such support is to be found, the trial court must be affirmed, for in that event, it could not be said that the lower court palpably abused its discretion.

Turning first to the reasons given by the trial court for the grant of a new trial, it is apparent that the court relied upon conclusions of law as well as findings of fact. One conclusion of law is that Westinghouse was prejudiced by the absence of its counsel. The findings of fact are that the case is complex in the number of parties and the alignment of their interests; only Mr. Byrne was familiar with the case and with the large volume of discovery which was taken over a three year period; only Mr. Byrne was present for Westinghouse at any proceedings prior to his illness, including the five days of trial and examination and cross-examination of witnesses; it was not possible for Mr. Schell to have prepared a complete and careful analysis of the materials in this case in the short time he was given;

neither Mr. Byrne nor Westinghouse were responsible for Mr. Byrne's absence. Finally, the trial court made what may be regarded as mixed conclusions of law and findings of fact in stating that Westinghouse was placed at a serious disadvantage by being required to proceed with counsel who had no exposure to the trial nor any hand in shaping its strategy; and that Westinghouse's disadvantage was compounded by the fact that the numerous other defendants had contrary interests.

The first question which arises upon this summary of the trial court's holding is whether the trial court's determination is to be regarded as a single reason (Westinghouse was prejudiced) or as multiple reasons (prejudice because Mr. Schell could not have reviewed and analyzed the record adequately; prejudice because Mr. Schell was not present at any prior proceedings; prejudice because Mr. Schell had no hand in shaping trial strategy; and prejudice because in addition to Mr. Schell being asked to litigate an unfamiliar and complex case, the interests of the other defendants were contrary to those of Westinghouse).

We regard the trial court's statement of reasons as multiple reasons, not a single reason for the grant of a new trial, since the trial court has concluded, in effect, that Westinghouse was prejudiced in a number of ways. Our review, therefore, is limited to "clear and palpable abuse of discretion." *Keefer v. Byers,* supra, citing *Muroski v. Hnath,* 392 Pa. 233, 237, 139 A.2d 902 (1958); *Braughler v. Commonwealth,* 388 Pa. 573, 581, 131 A.2d 341 (1957); *Frank v. W.S. Losier & Co. Inc,* 361 Pa. 272, 276, 64 A.2d 829 (1949). Since the record supports the findings that Mr. Schell could not have adequately reviewed the record in so short a time, that Mr. Schell was not present at any proceedings in this case prior to Mr. Byrne's illness; that Mr. Schell had no prior familiarity with the case and no hand in forming trial strategy; and that the contrary interests of the other defendants compounded Mr. Schell's difficulties, and since these facts support the trial court's conclusion that Westinghouse was prejudiced by being forced to pro-

ceed with substitute counsel, it cannot be said that the trial court abused its discretion in granting a new trial.

■ Furthermore, even if we were to regard the trial court's determination of prejudice as a sole reason which could be reviewed for its legal sufficiency, our conclusion would not be different. The trial court's determination of prejudice is supported by its factual findings, particularly the factual finding that Mr. Schell could not have adequately familiarized himself with the record and the case in the time allotted. Since this factual determination finds support in the record and, in turn, supports the legal determination of prejudice, the trial court's justification for the new trial is legally sufficient, and an appellate court may not overturn the trial court's ruling that a new trial is required. Superior Court, therefore, was in error in reversing the grant of a new trial.[4]

■ It remains, finally, to determine whether the new trial in this case should be conducted with respect to all parties, or only with respect to those parties who were not exonerated in the first trial. Without relying on any gener-

4. One aspect of Superior Court's opinion requires additional comment. Citing our decision in *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 184, 389 A.2d 568, 572 (1978), Superior Court quoted our statement that "when one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from serving as counsel to that client," and then concluded that substitute counsel was not a stranger to the case. This conclusion, following hard upon reference to the disciplinary rule prohibiting other members of a firm from representing a client when one member may not represent that client for ethical reasons (Disciplinary Rule 5–105), seems to imply that one attorney's knowledge of a case will be imputed to all members of the firm for all purposes, including the purpose of acting as substitute counsel.

Suffice it to say that if this is what Superior Court intended, it was in error. Disciplinary Rule 5–105 was never intended to serve as a device to impute the knowledge of one lawyer to all other lawyers in his firm for purposes of requiring them to act as substitute counsel. Rather, it serves simply to prevent lawyers from accepting employment which would impair their exercise of independent judgment on behalf of a client or representing conflicting interests, and to prevent other members of a firm from accepting employment when one member has this type of ethical conflict.

al rule of law as to when retrial must involve all parties, we agree with the trial court that this particular case requires a retrial as to all parties because the denial of adequate legal representation to Westinghouse precluded it not only from presenting an effective defense to the claims of the plaintiff, but also from effectively asserting that its co-defendants were responsible for plaintiff's injuries.

Reversed and remanded to the Court of Common Pleas of Philadelphia County for a new trial as to all parties.

McDERMOTT, J., did not participate in the consideration or decision of this case.

LARSEN and HUTCHINSON, JJ., dissent.